**MASTER SHEET METAL WORKERS AND COMPOSITION ROOFERS ASSOCIATION OF RHODE ISLAND, INC., Individually and on behalf of its members**

v.

**LOCAL UNION NO. 17 et al.**

**Civ. A. No. 74-274.**

United States District Court,
D. Rhode Island.

July 25, 1975.

Girard R. Visconti, Abedon & Visconti, Providence, R. I., for plaintiffs.

Donald J. Siegel, Segal, Roitman & Coleman, Boston, Mass., for defendants.

## OPINION

DAY, District Judge.

This is a civil action wherein the plaintiff, a construction industry "management" association, seeks declaratory and injunctive relief in an effort to forestall the enforcement of an allegedly improper and invalid arbitration award.[1] Specifically, the plaintiff seeks a court order declaring that the aforementioned arbitration award, insofar as it purportedly commands the plaintiff to furnish certain job-related benefits to the members of the defendant Local Union Number 17 (hereinafter Local 17) is "null, void and inoperative". Moreover, as previously alluded to, the plaintiff prays for the issuance of a court order vacating, modifying and/or correcting the arbitration award in question.[2]

---

1. This Court's jurisdiction over the instant action has been properly invoked by the plaintiff pursuant to the provisions of—
    A. Section 301 of the Labor Management Relations Act, that is, the provisions of section 185 of Title 29 of the United States Code; and

    B. Sections 10 and 11 of Title 9 of the United States Code.

2. The defendant has formally objected to the entry of a court order which would grant the plaintiff the aforementioned relief. Additionally, the defendant has filed a counter-

Prior to an analysis and final disposition of the precise legal issues which are presently in controversy before the Court, a brief recital of the pertinent facts herein involved must, in an effort to facilitate disposition of said legal issues, be set forth. Accordingly, an abbreviated statement of the facts presently before this Court follows immediately below.

On July 1, 1973 the plaintiff management association, by and on behalf of its members, executed a collective bargaining agreement with the defendant Local 17. Said agreement governed the

". . . [r]ates of pay, rules and working conditions of all employees of the employer . . ." See 1973–74 Collective Bargaining Agreement, at p. 4.

from July 1, 1973 through and until June 30, 1974. This Court is, for purposes of a reasoned disposition of the matter presently in controversy, particularly and exclusively concerned with Articles eight (8) and ten (10) and Addenda seven (7) through nine (9) of said aforementioned collective bargaining agreement.

Article 8 and Addenda 7 of said 1973–74 agreement both address the issue of the applicable hourly minimum wage for all journeymen sheet metal workers employed "in a shop or on a job" within the jurisdiction of the defendant Local 17. Specifically, Article 8 provides for an hourly minimum wage of nine dollars and thirteen cents ($9.-13). Addenda 7 modifies Article 8 by providing for a wage increase, effective as of January 1, 1974, of ten cents per hour. It is both interesting and important to note that Addenda 7, by its terms, expressly conditions the implementation of the aforementioned wage increase on official sanction and approval by the Construction Industry Stabilization Committee (hereinafter "CISC").[3]

Addenda 8 and 9, cited above, provide for a five (5) cent increase in the hourly rate of monetary benefits to be paid by the plaintiff to the defendant Local 17's insurance and pension plan funds, respectively. As was true with the aforementioned wage increases set forth in Addenda 7, these hourly increases in the payments to be deposited in Local 17's insurance and pension plan funds CISC, to have become effective on Januwere subject to the approval of the ary 1, 1974.

Article ten (10) of the 1973–74 collective bargaining agreement contains a particularized "grievance-arbitration" procedure. Section 5 of said Article 10, which is quoted in pertinent part below, bears particular import to the instant action. Said Section 5 provides, inter alia, as follows:

"Section 5. A Local Joint Adjustment Board and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation and, if it is believed warranted, to direct that the involved agreement and any other agreement or agreements between the employer and any other local union affiliated with the Sheet Metal Workers' International Association be cancelled. . . ." See 1973–74 Collective Bargaining Agreement at p. 14.

Subsequent to the execution of the 1973–74 collective bargaining agreement, that is, on October 9, 1973, the CISC declined to authorize the plaintiff's disbursement of the increments provided for in Addenda 7–9. The CISC, upon

---

claim whereby it seeks judicial affirmation and enforcement of the arbitration award in question.

3. The CISC was established on March 29, 1971 pursuant to the provisions of Executive Order Number 11588. Consonant with its status as being part of the federal government's wage and price control arsenal used to combat inflation, the CISC was created for the express purpose of assuring generally the stabilization of wages and prices in the construction industry.

Local 17's application for reconsideration, reaffirmed its decision to preclude the implementation of said pertinent wage, insurance fund and pension plan increases.

On April 30, 1974, the federal government's authority to impose wage and price controls expired.[4] Almost immediately thereafter, certain officers of Local 17 filed a request with representatives of the plaintiff association seeking implementation of the aforementioned wage, insurance fund and pension plan increases. Specifically, said request sought disbursement of the aforementioned increases by the plaintiff from May 1, 1974 through and until the expiration date of the 1973–74 collective bargaining agreement, that is, through and until June 30, 1974. The plaintiff refused to comply with said implementation request.

Subsequent thereto, that is on June 14, 1974, Local 17 notified the plaintiff that, pursuant to the dictates of Article 10 of the 1973–74 collective bargaining agreement, it wanted to submit the dispute concerning the propriety of the plaintiff's disbursement of the increases provided for in Addenda 7–9 to arbitration. The plaintiff rejected Local 17's demand for arbitration.

Notwithstanding the plaintiff's aforementioned refusal, Local 17 submitted the dispute in question to arbitration. An arbitration hearing was held on October 23, 1974,[5] and, pursuant thereto, an award was entered by the arbitrators in favor of Local 17.[6]

One final, and significant, factual circumstance must be noted. Prior to the expiration of the 1973–74 collective bargaining agreement, the parties presently before the Court entered into contract negotiations on an agreement which would govern the rates of pay, rules and working conditions of all of Local 17's members employed by the plaintiff from July 1, 1974 through and until June 30, 1975. No final, comprehensive and/or integrated collective bargaining agreement resulted from said contract negotiations. It is important to note that no formal collective bargaining agreement has *ever* been executed for the 1974–75 contract term. Notwithstanding the lack of a formalized and integrated agreement, however, the negotiating parties did reach a new one year agreement concerning applicable hourly wages, insurance fund and pension plan benefits.[7] It is of ultimate importance to note that this less than comprehensive, yet binding, agreement concerning

---

4. *See* Executive Order No. 11781 dated May 1, 1974.

5. As noted in the plaintiff's memorandum in support of its complaint, at pp. 6–7:
   "The plaintiff, through its president and attorney, appeared at said 'hearing' by 'special appearance only', i. e., the plaintiff appeared to protest the hearing and not to argue the merits of the defendant's 'alleged dispute' ".

6. The "decision" of the arbitrators reads as follows:
   "In view of the above facts, the Panelists render the following decision:
   1) Effective May 1, 1974, and continuing through June 30, 1974, the basic wage rate for journeymen sheet metal workers covered by the effective bargaining agreement shall be $9.23 per hour.
   2) Contributions to the Insurance Fund for a like period shall be at the rate of $.61 per hour.

3) Contributions to the Pension Fund for a like period shall be at the rate of $.60 per hour.
4) In accord with the statements made by the Contractors' representative at the Panel Hearing, the following increases to the *current* collective bargaining agreement will apply, effective 7/1/74,
A. Wages will be increased $.10 to $9.63 per hour.
B. H & W Insurance will be increased $.05 to $.71 per hour.
C. Pension will be increased $.05 to $.65 per hour.
D. The increase to Pension of $.15 per hour (effective 1/1/75) will be in addition to the above listed increases . . . ."

7. Said one year agreement provides for a $.70/hour increase in the monetary benefits payable on behalf of Local 17's members. Forty cents of said increment is attributable

wage, and other monetary benefits, did not expressly include any provision for Local 17's receipt of the increments set forth in Addenda 7–9 of the 1973–74 collective bargaining agreement.

As previously mentioned, the plaintiff has brought this action seeking declaratory and injunctive relief in an effort to forestall the enforcement of the aforementioned arbitration award. Specifically, it is the plaintiff's contention that said award is subject to vacation and/or modification as being invalid and improper because:

A. The dispute between the parties herein involved as to the propriety of the plaintiff's disbursement of the increments set forth in Addenda 7–9 is not an arbitrable grievance;

B. The arbitrators made a material mistake in interpreting both the 1973–74 bargaining agreement and the CISC orders rejecting the proposed wage, insurance fund and pension plan increases.

C. The arbitrators manifestly disregarded applicable principles of law in arriving at, and issuing, the award in question.

D. The arbitrators exceeded their authority by ordering the plaintiff to furnish the wage, insurance fund and pension plan increases in question to Local 17's members from May 1, 1974 through and including June 30, 1975.

The defendant has, in response, denied the validity of each of the four (4) aforementioned contentions and has, in addition filed a counterclaim by which it seeks a court order:

"a. Enforcing Article X Section 3 Panel Decision in full.

b. Awarding defendants their costs, including reasonable counsel fees involved in this action.

c. Granting such other relief as the Court may deem just and proper." *See* Defendant's answer and counterclaim, at p. 7.

This matter is presently before the Court on cross-motions which have been filed by the parties to the collective bargaining agreements in question. Specifically, the plaintiff seeks the issuance of a court order (1) declaring the arbitration award in question to be invalid, and (2) vacating and/or modifying said award. Additionally, the defendant has filed a motion for summary judgment whereby it prays for the entry of a court order enforcing the arbitration award in question and sustaining the aforementioned counterclaim. Consideration of the merits of the instant motions will follow immediately below.

## I. ARBITRABILITY OF THE PARTIES' DISPUTE

As previously mentioned, the plaintiff has posited, after-the-fact of arbitration, the threshold argument that the dispute in question should not, in the first instance, have been submitted to the arbitrators herein involved for decision. It is the plaintiff's contention that the aforementioned dispute was not arbitrable insofar as—

"It is clear that CISC orders are not subject to arbitration but that the Fed-

---

to an increase in wages from the aforementioned $9.13/hour to $9.53/hour. Ten cents of said increment is designated as payable to Local 17's insurance fund thereby increasing the hourly payments to said fund from $.56/hour to $.66/hour. Finally, twenty cents of said increment is allocated to Local 17's pension fund thereby increasing the hourly payments to said fund from $.55/hour to $.75/hour.

It is extremely important to note that the aforementioned increment of $.70 is, pursuant to the terms of the 1974–75 agreement, to be added to a base which does not include the increases set forth in Addenda 7–9 of the 1973–74 collective bargaining agreement. Exactly how this factual observation bears significant import to the disposition of the matter presently before this Court will be discussed below.

eral Courts have *exclusive* jurisdiction for appellate and review purposes." *See* plaintiff's memorandum in support of its complaint, at p. 16;

*See* also 211 of the Economic Stabilization Act of 1970.[8]

The plaintiff's argument concerning the non-arbitrability of the grievance in question is consistent with its more than slightly erroneous version of the disagreement which was, in fact, submitted to arbitration. In simpler terms, the plaintiff's contention that the aforementioned CISC orders were relevant to and included in the dispute which was submitted to arbitration is somewhat less than substantively accurate.

As will be explained below, the force and effect of the CISC orders in question expired on April 30, 1974. Said CISC orders did not, therefore, either preclude arbitration of the disagreement between the parties by vesting exclusive jurisdiction in this Court or constitute legally binding precedent which the arbitrators, who rendered their decision on October 29, 1974, were required to follow. More precisely, the CISC orders herein involved did not, except in the most tangential manner,[9] bear any relevance to the grievance submitted to arbitration.

The pertinent query which must be addressed prior to any resolution of the controvery as to the arbitrability, or non-arbitrability, of the dispute in question is whether or not said dispute, that is as previously mentioned, the parties' disagreement as to the propriety of the plaintiff's disbursement of the wage, insurance fund and pension plan increases set forth in Addenda 7–9 of the 1973–74 collective bargaining agreement, can be considered a grievance "arising out of the interpretation or enforcement" of

said 1973–74 agreement. With the above abbreviated analysis in mind, an inquiry into the arbitrability, or non-arbitrability, of the dispute in question will follow below.

The Supreme Court of the United States has, in *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960), set forth the standard to be applied by federal courts in determining whether or not resolution of an employer-employee labor dispute is to be obtained pursuant to the arbitration provisions of a pertinent collective bargaining agreement. The Supreme Court noted that:

> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. *It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.* Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. . . . The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. *The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware . . . .*," (emphasis added) *supra,* at pp. 567–568, 80 S.Ct. at p. 1346;

*See, e. g., United Steelworkers of America v. Warrior & Gulf Navigation*

---

8. Section 211 of the Economic Stabilization Act provides, in pertinent part, as follows: "(A) The district courts of the United States shall have exclusive and original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder . . . ."

9. The sole possible relevance that said CISC orders could bear to the dispute submitted to arbitration would be as an expression of an established government policy against the implementation of somewhat inflationary wage increases.

**1378**

Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . .," at p. 582, 80 S.Ct. at 1353); *Tobacco Workers Int'l U. Local 317 v. Lorillard Corp.*, 448 F.2d 949 (4th Cir. 1971). Any doubts concerning the arbitrability of a labor dispute should be resolved in favor of submitting said disagreement to arbitration. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, supra, at p. 582, 80 S.Ct. 1347; *Federal Commerce & Navigation Co. v. Kanematsu Gosho, Ltd.*, 457 F.2d 387, 390 (2d Cir. 1972).

■ With the above mentioned judicial precepts in mind, it is this Court's considered opinion that the plaintiff's aforementioned argument concerning the non-arbitrability of the disagreement herein involved is without legal merit.

There can be no question but that the parties' dispute, as it was submitted to arbitration, revolves around the differing interpretations they have ascribed to the phrase "pending CISC approval" as that term is found in Addenda 7–9 of the 1973–74 collective bargaining agreement. The plaintiff has claimed that said phrase constitutes an absolute condition precedent to the imposition of any obligation on its part to furnish the increases designated in Addenda 7–9. The plaintiff avers that said condition precedent has not been satisfied and accordingly has refused to implement said increments. The defendant has, in response, disputed the validity of the plaintiff's "absolute condition precedent" argument.

Clearly, the grievance in question is one "arising out of interpretation" of the 1973–74 agreement. It is obvious to a point of certainty that the dispute in question was properly submitted to arbitration.

## II. *REVIEW OF THE ARBITRATION AWARD*

■ Preliminarily, it must be noted that judicial review of the validity of arbitration awards is narrowly limited and circumscribed. In fact, it has been well settled as a general rule of law that unless arbitrators have exhibited a clear infidelity to their duties by fashioning remedial relief which does not "draw its essence" from the pertinent collective bargaining agreement, federal courts are without authority to review the merits of said arbitration awards. *See*, e. g., *United Steelworkers of America v. American Manufacturing Co.*, supra; *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Office Of Supply, Government of Korea v. New York Navigation Co., Inc.*, 469 F.2d 377 (2d Cir. 1972); *Swift Industries Inc. v. Botany Industries, Inc.*, 466 F.2d 1125, 1130 (3rd Cir. 1972); *Brotherhood of R. R. Trainmen v. Central of Georgia Ry. Co.*, 415 F.2d 403 (5th Cir.), cert. denied, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970); *Textile Workers Union of America v. American Thread Co.*, 291 F.2d 894 (4th Cir. 1961); *Keystone Printed Specialties Co., Inc. v. Scranton Printing Pressmen & Assistant's Union, No. 119*, 386 F.Supp. 416 (M.D.Pa.1974); *Nuest v. Westinghouse Air Brake Co.*, 313 F.Supp. 1228 (S.D.Ill.1970).

Consonant with this generally accepted judicial precept, the First Circuit Court of Appeals has set forth what has become a highly representative standard governing federal court review of the validity of arbitration awards. The First Circuit, in *Local Union No. 251 v. Narragansett Improvement Co.*, 503 F.2d 309 (1 Cir. 1974), has noted that:

"  .   .   . [C]ongress has carefully limited the scope of judicial review of arbitration awards. Where judicially enforceable arbitration is agreed to and confirmation of the award is sought, the 'court must grant such an

order unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this title (9 U. S.C. 10, 11)' . . . . The courts are precluded from considering factual or legal issues which are by voluntary agreement made the subject of arbitration. *Judicial intrusion is restricted to extraordinary situations indicating abuse of arbitral power or exercise of power beyond the jurisdiction of the arbitrator.* . . . The burden is on the party challenging the arbitral award to establish substantially more than an erroneous conclusion of law or fact. . . ." (judicial explication and emphasis added), *supra,* at p. 311.

With these cautionary guidelines clearly in mind, a consideration of the validity of the plaintiff's remaining three arguments [11] ensues.

#### A. *THE PLAINTIFF'S ALLEGATION THAT THE ARBITRATORS MADE A MATERIAL MISTAKE IN INTERPRETING THE 1973–74 COLLECTIVE BARGAINING AGREEMENT*

As previously mentioned, the plaintiff contends that the phrase "pending CISC approval", as it is found in Addenda 7–9 of the 1973–74 collective bargaining agreement, constitutes an absolute condition precedent to the imposition of any obligation to furnish the Addenda 7–9 increases on behalf of the members of Local 17. The arbitrators, in their ruling of October 23, 1974, declined to adopt the plaintiff's aforementioned construction and rendered an award on behalf of the members of Local 17.

It is this allegedly erroneous failure to construe the phrase "pending CISC approval" as an absolute condition precedent that the plaintiff suggests is a sufficiently fatal material mistake on the part of the arbitrators to justify the entry of a court order vacating and/or modifying the award in question.

What the plaintiff seeks is, in essence, judicial review of the merits of the arbitration award herein involved. As noted above, such a review is beyond the power of this Court. *See, e. g., Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123 (3rd Cir. 1969); *Trafalgar Shipping Co. v. International Milling Co.,* 401 F.2d 568 (2d Cir. 1968); *Saxis S. S. Co. v. Multifacs International Traders, Inc.,* 375 F.2d 577 (2d Cir. 1967). This is especially true where, as here, it *cannot* be said that the arbitrator's rejection of the plaintiff's "absolute condition precedent argument" is totally devoid of any basis in reason and logic.

Accordingly, the plaintiff's instant contention must be, and is, rejected as being an insufficient basis upon which this Court could enter an order vacating and/or modifying the arbitration award in question.

#### B. *THE PLAINTIFF'S ALLEGATION THAT THE ARBITRATORS MANIFESTLY DISREGARDED THE LAW*

The plaintiff has averred that the arbitrators manifested a flagrant and prejudicial disregard of the prevailing law by unlawfully reviewing and overruling orders issued by a federal agency, namely, the CISC. Specifically, the plaintiff contends that the arbitrators were without jurisdiction to review the merits of the CISC orders and were, in addition, without the legal power to overrule and override said federal agency decisions. See section 211 of the Economic Stabilization Act, footnote 8, *supra.* Wherefore, the plaintiff seeks the entry of a court order declaring the arbitration award in question to be null, void and inoperative.

▪▪▪ The force and effect of the CISC orders in question expired on April 30, 1974. *See* Executive Order 11781, dated May 1, 1974. It is clearly apparent that, notwithstanding the plaintiff's arguments to the contrary,

said orders did not fall within the protective penumbra of either the general federal savings statute [12] or the savings statute specifically set forth in section 218 of the Economic Stabilization Act itself.[13] *See, e. g., Allen v. Grand Central Aircraft Co.,* 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954); *United States v. State of California,* 504 F.2d 750 (Temp.Emerg.Ct. of App.1974); *Evansville Contractors Association, Inc., v. Local Union No. 90, etc.,* 21 W H Cases 752 (S.D.Ind.1974). In no way can it be said that the CISC orders in question maintained any legal vitality subsequent to April 30, 1974.

It is this Court's considered opinion, therefore, that the plaintiff's instant allegation is without merit. As is exhibited above, the CISC orders in question were in no way addressed, considered, or overruled by the arbitrators herein involved.[14]

## C. *CONFORMITY OF THE ARBITRATION AWARD TO THE PROVISIONS OF THE 1973–74 COLLECTIVE BARGAINING AGREEMENT*

As previously mentioned, judicial review of the validity of labor arbitration awards is narrowly limited and circum-

12. The general federal savings statute is embodied in 1 U.S.C. § 109 and reads, in pertinent part, as follows:

". . . . The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability. . . ."

The Supreme Court of the United States, in *Allen v. Grand Central Aircraft Co.,* 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954), has set forth the following controlling analysis of section 109:

"The precise object of the general savings statute is to prevent the expiration of a temporary statute from cutting off appropriate measures *to enforce the expired statute in relation to violations of it,* or of regulations issued under it, *occurring before its expiration.* . . ." (emphasis added), *supra,* at pp. 554–555, 74 S.Ct. at p. 756.

It is clearly apparent that section 109 is inapplicable to the CISC orders in question. Local 17 has never violated said CISC orders. Even assuming that Local 17's post-April 30, 1974 demands for implementation of the Addenda 7–9 increases did, in fact, constitute a violation of the CISC orders, said hypothetical violations would have occurred *after,* and not before, the expiration of the Economic Stabilization Act.

13. Section 218 reads, in pertinent part, as follows:

"§ *218. Expiration*

The authority to issue *and enforce orders* and regulations under this title expires at midnight April 30, 1974, but such expiration shall not affect any action or pending proceedings, civil or criminal, not finally determined on such date, *nor any action or proceeding based on any act committed prior to May 1, 1974.*" (emphasis added).

Section 218 is clearly inapposite to the instant action. No proceeding or action concerning the matter presently before this Court was pending and not finally determined as of April 30, 1974. Additionally, none of the "acts", so-called, alleged by the plaintiff to have occurred prior to May 1, 1974, are of such a nature as to invoke the saving provisions of section 218. *See, e. g., United States v. State of California, supra,* at pp. 755, 756 ("The second act advanced by the Government is the administrative proceedings through which the CLC prevented the implementation of the State Budget Act. These proceedings were initiated by the CLC, not California, and are not acts of California except to the extent that California filed a request for review, which was its statutory right. *Even if they were considered to be acts of California, these proceedings are not acts upon which any action or proceeding* for enforcement could be based. . . .", at p. 756). (emphasis added).

14. The plaintiff has posited an additional argument which is rejected by this Court as being unsubstantiated, and without foundation. Specifically, this Court alludes to the plaintiff's argument that the arbitrators herein involved were guilty of misconduct and misbehavior which prejudiced the plaintiff's rights. The plaintiff has completely failed to sustain its required burden of proof on this allegation, and, accordingly, said allegation is properly the subject of a preemptory rejection.

scribed. Consonant with this traditional and well established policy of judicial abstention from reviewing the merits of arbitration awards, federal courts have consistently afforded arbitrators great leeway in fashioning remedial relief in labor disputes. *See United Steelworkers of America v. Enterprise Wheel & Car Corp., supra*, 363 U.S. at 597, 80 S.Ct. at 1361 ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of the problem. This is escpecially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency . . ."); *International Union of Electrical, Radio & Machine Workers, AFL–CIO v. Peerless Pressed Metal Corp.*, 489 F.2d 768 (1st Cir. 1973); *Mogge v. District 8, etc.*, 454 F.2d 510 (7th Cir. 1971); *Tobacco Workers Int. U. Local 317 v. Lorillard Corp., supra; Brotherhood of R. R. Trainmen v. Central of Georgia Ry. Co.*, 415 F.2d 403 (5th Cir. 1969); *Yellow Cab Co. v. Democratic U. Organizing Committee, Local 777*, 398 F.2d 735 (7th Cir.), cert.

denied, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969).

■ Notwithstanding the validity of the aforementioned judicial precepts, it must be noted that the great majority of federal courts adhere to the well settled, almost proverbial, doctrine that labor arbitration awards which do not "draw their essence" from a pertinent collective bargaining agreement are subject to judicial vacation and/or modification.[15] *See United Steelworkers of America v. Enterprise Wheel & Car Corp., supra; International Union of Electrical, Radio & Machine Workers, AFL–CIO v. Peerless Pressed Metal Corp., supra; Timken Co. v. Local Union No. 1123, etc.*, 482 F.2d 1012 (6th Cir. 1973); *Federal Commerce & Navigation Co. v. Kanematsu-Gosho, supra; Diamond v. Terminal Ry. Alabama State Docks*, 421 F.2d 228 (5th Cir. 1970); *Ludwig Honold Mfg. Co. v. Fletcher, supra; Mutual Benefit Health & Accident Ass'n v. United Casualty Co., et al.*, 142 F.2d 390 (1st Cir. 1944); *Nuest v. Westinghouse Air Brake Co., supra.*

The question naturally arises as to when an arbitration award can be deemed to have "drawn its essence" from a pertinent collective bargaining agreement. An eminently reasonable

---

15. Labor arbitration awards are also subject to vacation and/or modification if they clearly exceed the terms of the pertinent submission agreement. *See Retail Store Employees Union Local 782 v. Sav-On Groceries*, 508 F.2d 500 (10th Cir. 1975); *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 143 U.S. App.D.C. 210, 442 F.2d 1234 (1971); *Kansas City Luggage & Novelty Workers Union, Local No. 66, etc. v. Newell Luggage Mfg. Co., Inc.*, 325 F.2d 992 (8th Cir. 1964); *Keystone Printed Specialties Co. Inc. v. Scranton Printing Pressmen & Assistants Union No. 119, supra; Amerada Hess Corp. v. Local 22026 Federal Labor Union*, 385 F.Supp. 279 (D.N.J.1974). There is, however, insofar as the plaintiff has at all times relevant to the case at bar refused to submit the dispute in question to arbitration, no "submission agreement", so-called to review in the instant action.

Notwithstanding this fact, it must be noted that although there was no formal agreement to submit the dispute in question to, arbitration, both the defendant Local 17 and the arbitrators acknowledged that the issue being decided in arbitration was—

"Is the Master Sheet Metal Workers and Composition Roofers Association of Rhode Island obligated to comply with all the terms and conditions of the labor agreement *effective July 1, 1973, and more specifically, the provisions of Addenda Nos. 7, 8 and 9 governing* wages and fringes question." Emphasis added. *See* Minutes of arbitration hearing of October 23, 1974.

Accordingly, judicial review will concern itself not only with the relationship between the award in question and the 1973–74 collective bargaining agreement, but also with the relationship between said award and the aforementioned issue submitted by Local 17 to arbitration.

and highly representative judicial response to this query has been set forth by the Third Circuit Court of Appeals in *Ludwig Honold Mfg. Co. v. Fletcher, supra*. Specifically, the Third Circuit noted in *Fletcher* that:

" . . . [a] labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." *supra*, at p. 1128.

■ Generalizing to approach a definitional understanding, it should be noted that an arbitration award which fashions a remedy which has no reasonable basis in, and/or relationship to, the pertinent collective bargaining agreement must be set aside as not "drawing its essence" from said relevant agreements.

With the aforementioned governing tenets in mind, a consideration as to whether or not the arbitration award in question "draws its essence" from the terms of the 1973–74 collective bargaining agreement will follow below.

■ It is clear beyond cavil that the arbitration award in question, insofar as it compels the plaintiff to disburse the wage, insurance fund and pension plan

increases in question from May 1, 1974 through and until June 30, 1974, does, in fact draw its essence from the provisions of the 1973–74 collective bargaining agreement.[16] The same conclusion concerning said arbitration award's propriety cannot, insofar as said award orders the plaintiff to disburse the aforementioned payments during the 1974–75 contract year, be drawn.

This Court recognizes the fact that the arbitrators herein involved were, pursuant to the provisions of Article ten (10), section five (5) of the 1973–74 collective bargaining agreement, empowered to make modifications in the 1974–75 contractual agreement negotiated between the plaintiff and Local 17.[17] It must be noted, however, that this modification authority was not totally unlimited. Section five (5), cited above, expressly limits the arbitrator's "remedy fashioning" powers so as to authorize solely the rendering of decisions and formulating of awards which the arbitrators can reasonably deem to be "necessary and proper".

It is clearly apparent that although the arbitrators herein involved were empowered to modify the 1974–75 employment agreement in question, the modifications which they did, in fact, make can in no way reasonably be considered necessary and/or proper.

Although the parties presently before the Court did not, as previously mentioned, execute a formal, comprehensive or integrated collective bargaining agreement for the 1974–75 contract year, they did enter into a one-year

16. Said arbitration award clearly has, insofar as it refers to the 1973–74 contract year, fashioned a "necessary and proper" remedy. *See* Article ten (10), section five (5) of the 1973–74 collective bargaining agreement. There was a legitimate arbitrable dispute between the parties as to the disbursement of the funds during the months of May and June of the 1973–74 contract year. Said dispute was resolved by the arbitrators without the presence of either a manifest disregard of the prevailing law or a totally unreasonable and unwarranted construction of the relevant facts.

17. As previously noted, Article ten (10), section five (5) provides, in pertinent part, as follows:

"A Local Joint Adjustment Board Panel and the National Joint Adjustment Board Panel are empowered . . . to direct that the *involved agreement and any other agreement* between the employer and any other local union affiliated with the Sheet Metal Workers International Association be cancelled. . . ."

agreement concerning hourly wage, insurance fund and pension plan payments. See Affidavit of George Riley, sworn and subscribed to on January 28, 1975, at p. 3; see also affidavit of Frederick Lutz, sworn and subscribed to on January 8, 1975. It is extremely important to note that said one-year agreement did not expressly include any provision for the continued payment of the increases set forth in Addenda 7–9 of the 1973–74 collective bargaining agreement. Additionally, said one-year agreement contains absolutely no reasonable basis for any inference or implication that the negotiating parties intended to provide for the continued payment of said Addenda 7–9 increments. See affidavit of Frederick Lutz, *supra*; see letter signed by Robert C. Keogh, dated July 15, 1974.

The defendants seek to obviate the import of any and all implications resulting from the complete lack of any mention of the Addenda 7–9 increases in the terms of the 1974–75 agreement by positing, through the aforementioned affidavit of George Riley, the allegation that the parties did, in fact, discuss and subsequently agree upon the fact that—

"[t]he economic package was over and above the wages and fringe benefits due and payable under the 1973–74 agreement . . . The local representative realized that the above described sum (the wages and fringe benefits payable on June 30, 1974) was subject to the grievance resolution procedures of the 1973–74 agreement. Throughout the negotiations Local 17 representatives reiterated their insistence that the 70¢ package be computed upon the wages and fringe benefits payable as of June 30, 1974 . . .", *supra,* at p. 4.

The plaintiff has categorically denied the validity of Mr. Riley's aforementioned statements. See affidavit of Frederick Lutz and Richard W. Moore,

sworn and subscribed to on January 31, 1975 at p. 2. ("During negotiations for the 1974–75 contract, Local 17 representatives *never* stated the "economic package" was in addition to the 20 cent increase . . . .").

The facts presently in the record before this Court conclusively contradict the validity of the defendants' above-stated position. As previously mentioned, it is clear beyond doubt that the terms of the 1974–75 agreement contain no provision for the continued payment of the Addenda 7–9 increments. Additionally, Local 17's own business representative, Robert Keogh, has implicitly acknowledged and admitted the absence of an intention to include any provision for the Addenda 7–9 increases.[18] Still further, Local 17 specifically limited its submission to arbitration to a consideration of the propriety of the plaintiff's disbursement of the Addenda 7–9 increases. See letter from George Riley to Frederick Lutz, dated June 14, 1973; see minutes of the Arbitration Panel Hearing on October 23, 1974.

Viewing the above cited facts in their entirety, and drawing the reasonable inferences available therefrom, it cannot be said that the defendants had any reasonable expectation that the award in question would extend its coverage to the terms of the 1974–75 contract year. The obvious lack of any, save a belated and after-the-fact, intent by the defendants to provide for the continued payment of the Addenda 7–9 increases during the 1974–75 contract year serves to preclude the arbitrators herein involved from extending the scope of the award in question to said 1974–75 employment term.

■ Arbitrators cannot and do not sit to dispense their own brand of industrial justice. Where, as here, the parties have clearly expressed their intentions as to what arbitral relief would be necessary and proper, an utter and

18. It is important to note that both Mr. Keogh's letter and Local 17's submission to arbitration were sent *after* the parties in question negotiated and executed the 1974–75 agreement.

**1384**

total disregard of such expression of intention moves the arbitration award in question beyond the realm of propriety.

Accordingly, the arbitration award in question is affirmed insofar as it refers to the 1973–74 contract year and vacated insofar as it attempts to govern the terms of employment between the parties in question for the 1974–75 contract year. Counsel for the plaintiff will prepare an appropriate order in conformity with this opinion.