## FALLS STAMPING & WELDING COMPANY, Plaintiff,

v.

## The INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Defendants.

Civ. A. No. C76–170A.

United States District Court,
N. D. Ohio, E. D.

July 6, 1976.

---

Herman E. Rabe, Buckingham, Doolittle & Burroughs, Edward C. Kaminski, John N. Childs, Akron, Ohio, for plaintiff.

Ray C. Sheppard, Erickson & Sheppard, Akron, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

Falls Stamping & Welding Company (hereinafter plaintiff) initiated this action on June 7, 1976 under Section 10 of the United States Arbitration Act of 1947, 9 U.S.C. § 10, to vacate and/or modify an arbitrator's award. Defendants have answered by denying the material allegations and counterclaiming for enforcement of the award and for compensatory and punitive damages for the allegedly malicious delay in execution.

On the same date this action was filed, the Court granted plaintiff's motion for a temporary restraining order staying the effect of said award. After hearing, the Court issued a preliminary injunction on June 14, 1976, which further stayed the award. The final hearing in this action was conducted on June 22, 1976. The following shall constitute the Court's findings of fact and conclusions of law.

The facts necessary to this decision are undisputed. In response to plaintiff's decision to discipline four press operators for allegedly cheating in piecemeal work at the plant, certain members of defendants' Local Union No. 1194, United Automobile, Aircraft & Agricultural Implement Workers of America (hereinafter Local) went on strike on August 28, 1975. After negotiations culminating in plaintiff's agreement to further investigate the charges of cheating, the employees returned to work on September 2, 1975. No disciplinary action was taken by plaintiff against the striking employees, although the collective bargaining agreement contained a "no-strike" clause.

After further investigation, plaintiff resolved to discharge two of the employees charged with cheating, and to suspend the

two female employees involved for twenty days. Upon learning of this action, the employees on the second shift went on strike on September 9, 1975. These employees were discharged on September 10, 1975. The strike spread to plaintiff's first shift on September 10, 1975.

On September 11, 1975, this Court granted a temporary restraining order enjoining the strike. The striking employees failed to return to work. On September 13, 1975, plaintiff wrote to the day shift employees and informed them that if they did not return to work by September 16, 1975, they would be discharged. None of these employees appeared for work on September 16, 1975, and were accordingly discharged on that date. Thereafter, a number of the striking employees applied for re-employment, apparently pursuant to a disputed agreement between the parties. Only fifteen (15) of the approximately one hundred and twelve (112) employees involved were rehired; none of these employees were granted retroactive seniority.

Thereafter, grievances were filed pursuant to the provisions of the collective bargaining agreement. Said agreement provides a multiple step procedure culminating in arbitration. After the initial steps of the grievance procedure failed to adequately resolve the controversy, the matter was referred to an arbitrator on four representative grievances. The arbitrator heard testimony and received exhibits for nine days and, on May 28, 1976, rendered a sixty-nine (69) page decision and award. The award ordered reinstatement with seniority but without back pay of "all discharged employees of August 28 and September 16, 1975" except the two employees on suspension for cheating at the time of the September 9 and 10, 1975 strike. The two female employees were ordered reinstated with seniority and back pay from October 1, 1975. By letter dated June 11, 1976, the arbitrator

corrected the reference to August 28, 1975 to read September 10, 1975. The error was apparently clerical in nature, as there were no employees discharged as a result of the August 28, 1975 strike. If this award is implemented, as many as ninety-three (93) of plaintiff's present employees must be discharged.

The subject grievances clearly fall within the scope of the parties' definition of matters subject to the grievance procedure. Similarly, it appears that, with two possible exceptions, all grievances were procedurally perfected.[1] The pivotal provisions of the collective bargaining agreement are those dealing with the powers of an arbitrator and the no-strike covenant.

Section 24 of the contract defines the arbitrator's powers as follows:

"The arbitrator's powers shall be limited to the application and interpretation of this Agreement as written. He shall at all times be governed wholly by the terms of this Agreement and he shall have no power or authority to amend, alter or modify this Agreement in any respect nor shall he consider any statute or laws not specifically incorporated herein. Any award of the arbitrator shall not be retroactive prior to the time that the grievance was first submitted in writing. The arbitrator's decision shall be final and binding upon the Union, Company, and employees. The expenses of the arbitrator shall be shared equally by the Company and the Union."

The no-strike provision is contained in Section 25 which reads, in pertinent part, as follows:

"During the term of this Agreement, the Union, its officers and stewards shall not instigate, promote, sponsor, or engage in a strike, slowdown, stoppage of work, or any other interruption of production. In the event any employee or group of em-

---

1. The grievances filed by the Local on the behalf of eighteen employees but without their individual signatures are defective, the plaintiff argues, for failure to follow the assertedly mandatory provisions of Section 19 of the collective bargaining agreement. Said section requires that grievances "shall be signed by the employees involved." The arbitrator ruled against plaintiff on this issue. Further, the arbitrator left unanswered the question of whether the two female employees suspended for cheating had perfected their grievances.

ployees covered by this Agreement participate in a strike, slowdown, stoppage of work, or any other interruption of production, the Union shall immediately, upon being notified by the Company, instruct any such employee or group of employees to resume work immediately. The Company shall have the right to discharge or otherwise discipline any employee who does engage in a strike, slowdown, stoppage of work, or interference with Company's operation during the term of this Agreement, any discipline or discharge as a result of the foregoing is subject to the grievance procedure."

Although plaintiff advances a number of the grounds contained in Section 10 of the United States Arbitration Act of 1947, 9 U.S.C. § 10, the Court concludes that subparagraph (d) of said section is dispositive of this action. Said subparagraph provides that an award may be vacated where the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

■ As stated by the Supreme Court in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960):[2]

"It is the arbitrator's construction that was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

Nevertheless, the Supreme Court also said in that opinion:

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice . . . [H]is award is legitimate only so long as it *draws its essence* from this collective bargaining agreement. When the arbitrator's words manifest an

infidelity to this obligation, courts have no choice but to refuse enforcement of the award." 363 U.S. at 597, 80 S.Ct. at 1361. [Emphasis supplied.]

This "essence" concept has been consistently applied by the lower federal courts. See e. g. *Timken Co. v. Local Union No. 1123, United Steelworkers of Am.*, 482 F.2d 1012 (6th Cir. 1973); *Amanda Bent Bolt Co. v. International U. U.A.A., A.I.W.*, 451 F.2d 1277 (6th Cir. 1971); *Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228 (5th Cir. 1970); *Master S.M.W. & C. R. Ass'n. of R. I. Inc. v. Local Union No. 17*, D.C., 397 F.Supp. 1372 (1975); *Amerada Hess Corp. v. Local 22026 Fed. Lab. Union, AFL–CIO*, 385 F.Supp. 279 (1974).

■ Plaintiff argues that the arbitrator exceeded his authority by entering an award which is contrary to the express language of Section 25 of the contract granting it the right to discharge striking employees. The Court agrees.

In *Amanda Bent Bolt Co. v. International U., U.A.A., A.I.W.*, supra, the Sixth Circuit dealt with a very similar situation. In that case, the arbitrator determined that employees striking in violation of a no-strike provision in the collective bargaining agreement should be reinstated with back pay. The court held that as said award was directly contrary to express language of the contract allowing the company to discharge striking employees, the arbitrator had exceeded his authority under the contract.

Defendants argue that *Amanda Bent Bolt* is not determinative of this action. Specifically, they contend that that case is distinguishable because Section 25 of the instant contract expressly provides that any discipline effected by plaintiff for violations of the no-strike clause is subject to arbitration, whereas the *Amanda Bent Bolt* contract did not have such a clause. This argument is specious for while the inclusion of said provision is relevant to a determination of the arbitrability of the issue, it in no

**2.** *Enterprise* was the third case of the famous Steelworkers trilogy. See also *United Steelworkers v. American Mfg.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

way expands the authority of the arbitrator delineated in Section 24 of the collective bargaining agreement. The simple fact remains that, unless findings of the arbitrator demonstrate cogent grounds for disregarding the express terms of the contract, *Amanda Bent Bolt* requires the vacation of this award.

Identification of the grounds for the arbitrator's decision has not been an easy task, as said decision is repetitive, loquacious, and imprecise. The greatest part thereof consists of summaries of the evidence and of the parties' respective positions. There are practically no findings and very little discussion. However, close scrutiny reveals that the arbitrator's rationale is predicated upon his conclusion that plaintiff had "unclean hands." The arbitrator stated:

> "While the decision on four (4) Press Operators precipitated the walkouts the employees contended many Company improper actions and weaknesses of the Union Officers to cope with contract violations were underlying factors. The second walkout lasted five working days during which period all who testified and participated in the unauthorized strike steadfastly maintained they could not return to work, albeit Court order and Union exortations to do so were known, due to threats of bodily harm. This defense is understandable due to the plant being highly integrated with ex-felons among them. To name those doing the threatening, if known, could have brough (sic) on retaliatory measures. About one sixth of the work force walked out, however, the evidence is they were at the plant before 6:30 a. m. the next day and 'persuaded' the day shift to join them. The Arbitrator recognizes the 'threats' as occurring after the fact the walk out.

> "The Arbitrator concludes and finds the Company did not have clean hands. It permitted violations of the contract to continue by Supervisors long after it was apprised of them. One of the principal antagonists toward employees in contract violations was an ex-convict Foreman who operated an after hours bar. The Company steadfastly supported his bra-

zen acts in thwarting attempts by employees to utilize the grievance procedure. The futility of the grievance procedure was manifest when Foreman Stallworth threatened transfer and discharge if any filed a grievance. His actions made a mockery of the grievance procedure. The evidence established that he was the prime Union 'baiter' among Supervisors. "The intimidation by Supervision in effectively thwarting the employees' use of established contractual procedures caused complete frustration to the point that employees took matters into their own hands. While this Arbitrator does not condone self-help by these employees, even though they had reason to vent their feelings, the penalty of discharge was inappropriate."

■ If the arbitrator was referring to the clean hands maxim of courts of equity, such reference is inapposite. Said maxim is applicable only to those seeking the intervention of a court of equity; it is a principle of inaction, and it is applied "no matter how improper may have been defendant's behavior." 30 C.J.S. *Equity* § 93, pp. 1010–1011 (footnote omitted). Here it is the union which was seeking the affirmative action. The clean hands maxim is not applicable.

■ If the arbitrator's reference to unclean hands was predicated upon his personal sense of industrial justice, it is equally irrelevant. While that may be a consideration in some arbitration proceedings, it cannot take precedence over the express and explicit terms of the contract. *Amanda Bent Bolt Co. v. International U., U.A.A., A.I.W., supra.*

The only remaining explanation could be derived from the arbitrator's oblique reference, made in summary of the Local's position early in the decision, to *Mastro Plastics Corp. v. National Labor Relations Board*, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). In *Mastro Plastics*, the Supreme Court held, insofar as relevant herein, that the subject no-strike clause did not waive a union's right to strike solely in protest of an

employer's unfair labor practice in attempting to coerce its employees to abandon their certified bargaining agent for another. Apparently the arbitrator concluded that plaintiff's conduct prior to the strike, and specifically the conduct of the "ex-convict Foreman," was the functional equivalent to the unfair labor practice found to exist in *Mastro Plastics*.[3]

Such a rationale misconstrues the extent of the arbitrator's authority under the collective bargaining agreement. As quoted above, Section 24 of said agreement provides that the arbitrator's powers were limited to application and interpretation of the Agreement "as written." It is further stated that he shall not alter or amend the contract, nor shall he consider any statutes or laws which were not specifically incorporated into the agreement. The clause in Section 25 of the Agreement permitting plaintiff to discharge employees striking in violation of that section is clear and express. The arbitrator's "unclean hands" rationale implicitly recognizes this: yet by reference to concepts not contained in the contract the arbitrator rendered this clause ineffective. Implementation of this rationale through the award constitutes an abuse of the arbitrator's authority.[4]

As additional and alternative grounds for this holding, the Court concludes that even assuming arguendo that the arbitrator's authority did extend to consideration of the *Mastro Plastics* case in direct contravention of the contract's provisions, the holding of that case is applicable in this factual situation. The Supreme Court reasoned in that case that the collective bargaining agreement involved therein dealt solely with "the economic relationship" between the employer and the employees. 350 U.S. at 281, 76 S.Ct. at 357. Such a contract assumes that there is a lawfully designated bargaining agent. Thus, when the companies involved in that case attempted to coerce their em-

ployees into accepting a different, more "acceptable" bargaining agent, significant effects beyond the economic relationship of the employer-employee were created. These effects were, the Supreme Court concluded, beyond the scope of the agreement and its no-strike clause. Therefore, since that strike was "solely" in protest of the unfair labor practice, there was no waiver of the employees' right to strike. 350 U.S. at 284, 76 S.Ct. at 358.

In this case, however, the strike was, as recognized by the arbitrator, precipitated by the plaintiff's decision to discipline four employees. This clearly relates to the economic relationship between employer and employee. Therefore *Mastro Plastics* is not controlling.

The only remaining issue which merits discussion concerns the two female press operators suspended by plaintiff for allegedly cheating. Apparently the arbitrator concluded that these employees were on suspension at the time of the strike, and therefore that they were not strikers subject to discharge. The arbitrator stated that:

"Provided they grieved their discharge and do so file it timely, the Arbitrator orders [them] reinstated with seniority and back pay  .  .  .."

No finding as to the procedural integrity of said employees' charges was ever made; nor does the record reflect any stipulations on this issue. Clearly such incomplete findings do not constitute a "mutual, final, and definite award." 9 U.S.C. § 10(d).

In view of this decision, and for the reasons stated above, the Court concludes that defendants' counterclaims are meritless.

■ Accordingly, the arbitrator's award shall be vacated. In view of the clarity of plaintiff's right to discharge the striking employees, the Court concludes that further

---

3. Yet the arbitrator effected a type of compromise when he upheld the grievances. He ordered reinstatements without back pay for all employees except the two female press operators, whereas full relief would have necessitated a back pay award for all employees.

4. The appropriate means for rectifying any claimed unfair labor practice was through the National Labor Relations Board. While a complaint was filed, it was later withdrawn with National Labor Relations Board's approval.

arbitration of this issue is unnecessary. Therefore, judgment shall be granted to plaintiff on this issue. However, the parties shall be ordered to submit to the arbitrator the issue of the sufficiency of the grievances filed by the two female press operators.

IT IS SO ORDERED.