UNITED STEELWORKERS OF AMERI-
CA et al., Appellant-Cross-Appellee,

v.

LORAIN, A DIVISION OF KOEHRING
COMPANY, Appellee-Cross-Appellant.

Nos. 77–1678, 77–1679.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1979.

Decided Feb. 14, 1980.

Rehearing and Rehearing En Banc
Denied April 4, 1980.

George C. Longshore, Cooper, Mitch & Crawford, Birmingham, Ala., James D. Robinson, Goins, Gammon, Baker, Robinson & Grisham, Chattanooga, Tenn., for appellant-cross-appellee.

Alfred W. Vadnais, Humphreys, Hutcheson & Moseley, Chattanooga, Tenn., for appellee-cross-appellant.

Before WEICK, KEITH, and KENNEDY, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Appellee Lorain filed suit July 20, 1976, against the United Steelworkers of America (International Union), its staff representative Crawford, Local Union No. 8164, and a number of local officers, alleging an illegal strike involving arbitrable issues in violation of a no-strike clause of a collective bargaining agreement with the International Union. Lorain prayed for a temporary restraining order and damages against all defendants incurred as a result of the strike. A temporary restraining order was granted the same day suit was filed. That evening the local union's officers read the court's order to the striking workers at the picket line, and they returned to their jobs the next morning.

Subsequently, a trial was held on the issue of damages. The District Judge ruled that individual union members were not liable in damages for breach of a no-strike clause regardless of whether the union was liable, relying upon *Sinclair Oil Corporation v. Oil, Chemical and Atomic Workers International Union,* 452 F.2d 49 (7th Cir. 1971), and dismissed the damage claim against them. Although denying damages for the first few days of the strike, he found the International Union liable for losses suffered Monday, July 19, and Tuesday, July 20. He concluded that from

> "after Sunday, July 18, 1976, the International Union, acting through its International Representative as well as through the officers of the Local Union, breached the no-strike clause of its collective bargaining contract with the Company by the failure and refusal of its agents from and after that date to take any further action whatever to seek, induce or procure a termination of the illegal work stoppage that had commenced upon the previous Thursday."

In reaching this conclusion, the trial judge interpreted the collective bargaining agreement to require the union actively to endeavor to prevent or terminate any strikes, a best efforts standard. The no-strike clause of the collective bargaining agreement provides in part:

> [T]he Union will not cause, sanction, or approve any employees represented by it to cause or participate in any strike . . . On the contrary, the Union will actively discourage and endeavor to prevent or terminate any stoppage, slow-down, or other interruptions of work, and participation in such activities during this Agreement (or extension) shall result in discharge of all those employees responsible for such occurrences. . . . The Union shall not be liable for monetary damages for unauthorized strikes, work stoppages, etc. or other interruptions of work which are not authorized, supported, encouraged or ratified by it . . .

Art. II. The trial judge interpreted the words "actively endeavor to terminate" as increasing the duty contracted for by the

union beyond that imposed by operation of law.

On the morning of the walkout, Thursday, July 16, 1976, the president of the local met with company representatives concerning an employee's vacation and temporary transfers of employees. No resolution of the problem was reached. The District Court found that when word of the results of this conference circulated among the employees, there were rumors about a walkout. His finding that the local union representatives were in no manner involved in initiating or promoting a walkout but used their influence to attempt to avoid it is supported by substantial evidence. The District Judge further found that the International took positive action, such as President I. W. Abel's telegram asking that the strikers return to work and various acts of staff representative William Crawford in cooperation with local officers directed toward ending the strike.

The trial judge held, however, that the failure and refusal of the union agents to take any action after Sunday to try to terminate the admittedly illegal work stoppage constituted a ratification of the strike after that date. The failure of the union, after termination of the strike, to discipline those members who initiated it, was, he found, further evidence of ratification. Finally, the trial judge dismissed an item of damages claimed by the company.

Both parties have appealed the trial court's ruling. The International Union asks this Court to find that the District Judge erred in interpreting the contract to require it to take affirmative action to end the strike. It also asks that his finding that the union ratified the work stoppage be set aside as clearly erroneous and without foundation in the record. The company asks this Court to add as damages, additional sums for losses during the earlier days of the strike or, in the alternative, to enforce liability for these additional sums on those defendants whom the trial judge dismissed.

█ Congress has provided that a union is not to be subjected to liability for a strike "except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof." 29 U.S.C. § 106. "Clear proof" means proof which is clear, unequivocal, and convincing. *Ramsey v. UMW*, 401 U.S. 302, 311, 91 S.Ct. 658, 664, 28 L.Ed.2d 64 (1971); *UMW v. Gibbs*, 383 U.S. 715, 737, 86 S.Ct. 1130, 1144, 16 L.Ed.2d 218 (1966); *James R. Snyder Co. v. Edward Rose & Sons*, 546 F.2d 206, 209 (6th Cir. 1976). It is not the law in this circuit that a union is required to take affirmative action to end a strike, absent exceptional circumstances, *UMW v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Buckeye Power Co. v. Utility Workers Union*, 607 F.2d 759 (6th Cir. 1979); *Carbon Fuel Co. v. UMW*, 582 F.2d 1346 (4th Cir. 1978), aff'd, —— U.S. ——, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). The best efforts doctrine of *Eazor Express, Inc. v. Teamsters*, 520 F.2d 951 (3d Cir. 1975), cert. denied, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976), has been repeatedly disavowed in this circuit; *see, e. g., Southern Ohio Coal Co. v. UMW*, 551 F.2d 695, 701 (6th Cir. 1977), cert. denied, 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 155 (1977); *North American Coal Corp. v. UMW*, 497 F.2d 459, 467 n.3 (6th Cir. 1974).

█ It is impossible to apply the concepts of ratification, authorization, or participation without comprehending the peculiar role which unions play in labor relations. It is not the union's role to act as an agent of the employer, to perform acts the employer requires, but to be the representative of its members. Obviously damages may not be awarded as a result of a union's performing its normal union functions, *UMW v. Gibbs*, 383 U.S. 715, 738–39, 86 S.Ct. 1130, 1145, 16 L.Ed.2d 218 (1966); *Riverside Coal Co. v. UMW*, 410 F.2d 267, 275 (6th Cir. 1969), cert. denied, 396 U.S. 846, 90 S.Ct. 89, 24 L.Ed.2d 95 (1969). The union's actions in this case, examined in light of federal labor policy as interpretative of the standards to be applied in § 301 suits, *Boys Market, Inc. v. Retail Clerks Union*, 398 U.S. 235, 242, 90 S.Ct. 1583, 1587, 26 L.Ed.2d 199 (1970); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), do not support a finding of lia-

bility for damages on the part of the defendant.

■ Relying upon *Eazor Express, supra,* the District Judge imposed liability because of the union's inaction during the last two days of the strike. The trial judge based his holding in part on his interpretation of the collective bargaining agreement which he found to create a higher duty on the part of the union. A union may agree to assume a greater responsibility for ending illegal strikes than that imposed by law. *See* A. Cox, *Some Aspects of the Labor Management Relations Act, 1947,* 61 Harv.L.Rev. 274, 306 (1948). However, liability is not properly imposed in the absence of specific language so requiring. *Penn Packing Co. v. Amalgamated Meat Cutters,* 497 F.2d 888, 891 (3d Cir. 1974); *cf. Latas Libby's, Inc. v. United Steelworkers of America,* No. 79–1081 (1st Cir. Nov. 6, 1979). The trial judge read the term "actively discourage and endeavor to terminate" as imposing an additional duty on the union, the violation of which would subject it to damages. However, that term does not appear in the sentence dealing specifically with damages. The terms defining conduct which do appear in the sentence limiting liability for damages impose no higher a standard of responsibility than that of the law. The phrase on which the District Judge relies appears in a sentence which imposes as a sanction the discharge of employees participating in such a strike. Considering that in that position it serves a function, separate and apart from the question of defining standards of conduct which will subject the union to damages, it is inappropriate to imply its existence in the damages sentence as well. This is especially true where the language of the damages sentence is clear and unambiguous.

The company also argues that the District Judge concluded that the union had ratified the strike by its refusal and failure to take any action on Monday and Tuesday, the last two days of the strike. It is not clear whether this holding is independent of the District Court's construction that the collective bargaining agreement required "best efforts" on the part of the union. In either event it cannot stand.

■ A finding that failure to act for two days under the circumstances which existed constituted ratification is clearly erroneous. Inactivity for two days, where there is no requirement that the union take affirmative steps to end the strike, is not ratification. It is at best ambiguous. In *United Mine Workers of America v. Coronado Coal Co.,* 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1921), Chief Justice Taft ruled that a report by the national president of a union expressing sympathy with the purpose of certain acts of union members did not "indicate a desire to ratify the transaction as his work." *Id.* at 394, 42 S.Ct. at 577. The District Judge expressly found that the union had not authorized, supported, or encouraged the work stoppage. He appears to have given no consideration to the fact that the union officials had done nothing that tended to cancel their past acts denouncing the strike. Their position was well known to the membership. Further, they had been advised previously that the company would seek a temporary restraining order on Monday. They agreed to make themselves available and not oppose this action. This willingness to cooperate must negate any ambiguity in their silence.

■ On appeal, the acts which the company urges most strongly as evidence of ratification are the union's attempts to discuss the substance of grievances with the employer. It appears to the Court that a distinction must be made between presenting grievances to the company as a means of asserting the validity of the strike as opposed to seeking to resolve hurdles which stood in the way of persuading the employees of the desirability of returning to work. As President Thomas stated, he intended by such discussion to benefit the plant. (Thomas Tr. 272). There exists a strong NLRA policy in favor of discussion of grievances, as distinguished from more formal grievance resolution procedures available. "The act was framed with an awareness that refusals to confer and negotiate had been one of the most prolific causes of industrial strife." *Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 211, 85 S.Ct. 398, 403, 13 L.Ed.2d 233 (1964). Congress has expressly imposed a duty on em-

ployers and unions to confer and endeavor to settle disputes expeditiously whenever one party makes such a request. 29 U.S.C. § 174(a)(2). The legislative history of this section indicates that this duty continues to exist despite the presence of an arbitration agreement. [1947] U.S.Code Cong. & Admin.News 1135, 1169; cf. 29 U.S.C. § 108. Thus it is NLRA policy that discussion of issues is to be promoted as a means of removing grievances and improving and stabilizing relations. As the Supreme Court recently noted, the cost of discussion is slight compared to the potential gains. *Ford Motor Co. v. NLRB,* 441 U.S. 488, 502 n.14, 99 S.Ct. 1842, 1852 n.14, 60 L.Ed.2d 420 (1979). Thus the union cannot be found to have supported the strike when it requested the company to discuss the workers' grievances.

■ The second act alleged as evidence of ratification or support of the strike was a failure to discipline strikers by the union. The employer repeatedly called upon the union to bring sanctions against its membership in order to get them back to work. These demands were made, although, as admitted at trial, company officials professed no knowledge of the method by which such sanctions may be imposed. (Black Tr. 100). It may be that "the availability of stronger persuasive measures is relevant to the critical question of the reasonableness of the steps which were taken." *U. S. Steel Corp. v. UMW,* 598 F.2d 363, 366 (5th Cir. 1979). It follows that their unavailability must also be a relevant factor. In this case, it is clear that disciplinary measures were both legally and practically unavailable to the union during the two-day period for which liability was found. National labor law forbids the imposition of sanctions unless the member is given written specific charges, reasonable time to prepare defenses, and a full and fair hearing. 29 U.S.C. §§ 411(5), 529. In addition, the union constitution provides a procedure which ensures due process and which accordingly requires some time to implement. (App. 96; Crawford Tr. 354–55, 360).

As a practical matter, since local members must vote on a decision to sanction, it is unlikely that any sanctions could ever have been effectively brought. (Crawford Tr. 478–79). It should not be forgotten, and the employer was certainly aware, that discipline was a remedy available to it. *U. S. Steel Corp. v. UMW,* 519 F.2d 1249, 1255 (5th Cir. 1975). It is thus inappropriate for the employer to insist, as it did here, that the union take a step which it was not required to take, *id.,* which may not have been available to it, and which involves a purely internal matter, *U. O. P. Norplex v. NLRB,* 445 F.2d 155, 157 (7th Cir. 1971).

■ The fact that the union aided employees in presenting their grievances following the strike cannot be used as evidence of intent to support the strike, considering that federal law imposes on unions certain duties as representatives of their employees. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The union constitution gives discharged workers the right to bring a grievance. Art. VIII. The results of the arbitrator's decision support a conclusion that the severity of the discipline meted out was unwarranted in virtually every case, *Koehring Co.,* 69 L.A. 459 (1977). "It would be going very far to consider such acts . . . a ratification . . . creating liability for a past tort." *UMW v. Coronado Coal Co.,* 259 U.S. 344, 394, 42 S.Ct. 570, 577, 66 L.Ed. 975 (1921). At the most, bringing grievances could indicate sympathy with the strikers' position, but that is not proof of "prior initiation" or a "desire to ratify the transaction as [the union's] work." *Id.*

■ The employer also urges that the union's refusal to join with it in seeking an injunction was evidence of an intent to support the strike. The union acknowledged from the inception of the walkout that the strike was illegal and did not oppose entry of a temporary restraining order. It is difficult to see how it could have done more to facilitate obtaining a TRO. Had it joined with the employer in seeking an injunction against itself, it is possible that the lower court would have been without jurisdiction to act, there being no case or controversy presented to it. U.S.Const. Art. III, § 2.

924

The one positive act which can be asserted to show an act of support by a union officer was Trustee Voile's appearance on the picket line. The trial judge did not find this a basis for liability, and there is no evidence that Voile's actions were taken at the instigation of the union. He must be found to have acted in his personal capacity.

For the reasons stated, the judgment against the International Union is REVERSED. The judgment dismissing the individual defendants is AFFIRMED for the reasons given by the District Judge, that there is no action for damages against such individuals. The employer's remedy against such individuals must be discipline or discharge as provided by the collective bargaining agreement. The judgment in favor of the local union is likewise AFFIRMED.