**FALLS STAMPING AND WELDING CO., Plaintiff-Appellant,**

**v.**

**INTERNATIONAL UNION, UNITED AUTOMOBILE WORKERS, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, REGION II, et al., Defendants-Appellees.**

**No. 83–3293.**

United States Court of Appeals, Sixth Circuit.

Argued April 4, 1984.

Decided Sept. 20, 1984.

Edward C. Kaminski, John C. Childs, (argued), Buckingham, Doolittle & Burroughs, Legal Professional Association, Akron, Ohio, for plaintiff-appellant.

Eugene Green, Ronald Macala, Youngstown, Ohio, Leonard R. Page, Michael B. Nicholson (argued), Associate General Counsel, International Union, UAW, Detroit, Mich., for defendants-appellees.

Before LIVELY, Chief Judge, JONES, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

In this civil action to recover damages for breach of contract and tortious interference with a business, the plaintiff, Falls Stamping and Welding Company (the Company), appeals from the district court's grant of summary judgment in favor of the defendant, United Automobile Workers International Union and Local 1194 (the Union). The Company's claims arise out of the Union's authorized and unauthorized strikes, and its alleged use of collective bargaining methods to destroy the Company. Upon consideration of the issues presented by this appeal, we affirm.

The Company had a collective bargaining agreement with the Union which contained a no-strike provision. The agreement was effective from May, 1974 to May, 1977, but a major portion of the work force walked off the job in August, 1975. It is undisputed that the walk-out violated the no-strike provision. This "wildcat" strike was precipitated by the discharge of four employees due to alleged dishonesty.

Union representatives met with Company officials and agreed that if the Company would reinstate the discharged employees pending further investigation, the strikers would return to work. The Company investigated the allegations of dishonesty and decided to discharge two employees and suspend two others. In response to this decision, the entire second shift excluding probationary employees walked off the job on September 9, 1975 and picketed. The next day, the first shift refused to work. The Union leaders in the work force did not cross the picket line and no incidents of violence occurred.

As a result of the Union's September 9, 1975 strike the Company sought injunctive relief in federal district court. The Company alleged that the strike violated its collective bargaining agreement with the Union. The district court granted a temporary restraining order, a preliminary injunction, and in December, 1975, a permanent injunction. In the order granting the permanent injunction, the court released the bond and assessed costs, but did not grant or deny damages. By its terms the district court order expired on the date that the collective bargaining agreement expired.

As a result of the district court order, the Company terminated the employment of all strikers who did not return to work. Grievances were thereafter filed by the employees. In May, 1976, the employee grievances were sustained by the arbitrator, who ordered reinstatement with backpay of employees who were terminated because of the strike. The district court va-

cated the arbitration award, 416 F.Supp. 574 (N.D.Ohio 1976), but on appeal, this Court reversed and remanded the case with instructions to reinstate the award. 575 F.2d 1191, 1192 (6th Cir.1978). The district court subsequently reinstated the arbitrator's award and ordered backpay and damages. 485 F.Supp. 1097 (N.D.Ohio 1979). A special master reviewed the claims and in February, 1980, the district court rendered judgment in favor of the Union and the employees for $443,250. On appeal, this Court affirmed. 667 F.2d 1026 (6th Cir.1981).

The collective bargaining agreement was due to expire in May, 1977. Negotiations for a new contract began in March, 1977. The Company alleges that the Union made unreasonable demands and statements which indicated an intent to damage the Company. The negotiations broke down, and after the contract expired the employees engaged in an economic strike. The Union was decertified in January, 1979, and the strike ended.

The present action was instituted in March, 1980. The Company brought suit in state court against the international and local Unions and numerous members of the local. The Company sought to recover damages on two grounds: (1) breach of contract during the unauthorized strikes in 1975, and (2) tortious interference with the plaintiff's business arising out of the Union's conduct during the 1977 negotiations for a new contract. The Company moved to consolidate the case with its 1975 action in the same district court, which it claimed was still pending. The district court denied the motion, concluding that the 1975 case was no longer pending.

The district court granted summary judgment for the Union on several grounds. First, the court held that any claim arising from the 1975 strikes was precluded from litigation under the doctrine of res judicata because the permanent injunction of December, 1975, was a final determination of all claims arising from the 1975 strikes. Second, even if the claims were not barred, they were without merit.

Third, the district court found that the tort claim under state law was preempted by federal labor law.

## I. Preemption

The leading case on federal preemption of labor cases is *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The general rule set forth in *Garmon* is that states may regulate activity that is "a merely peripheral concern" of federal labor law. *Id.* at 243, 79 S.Ct. at 779. States may not regulate conduct that is the subject of national regulation; to give such control to state legislatures or courts would create potential frustration of Congress' purposes and potential conflict in rules of law, remedies, and administration. *Id.* at 242, 244, 79 S.Ct. at 778, 779.

In *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the Supreme Court held that under certain circumstances a state court could hear a tort claim involving union activities even though the federal system also had jurisdiction. To determine whether a particular set of circumstances warrants such concurrent jurisdiction, this Court must consider, (1) whether the conduct complained of was protected by the Act so that a state action could interfere with or regulate conduct that was intended to be protected by Congress, (2) whether there was an overriding state interest in protecting its residents, and (3) whether the state cause of action might interfere with the effective administration of national labor policy. Thus, as long as a state court can order a remedy without interfering with federal labor policy, the state court may act to protect important state interests. Accordingly, a state court may act when violence occurs or is threatened, *United Auto Workers v. Russell*, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); *Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957), or when trespasses on property are committed, *Sears, Roebuck & Co. v. San Diego District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), even though these torts

may occur in connection with a labor dispute. The Company urges this court to extend the rationale of *Farmer.*

In *Farmer,* the Court permitted a union leader who was threatened and intimidated by other union members to sue in state court for intentional infliction of emotional distress because the infringement on federal labor policy was slight and the state had a substantial interest in protecting its citizens from abuse. 430 U.S. at 301–05, 97 S.Ct. at 1064–66. Recently in *Belknap, Inc. v. Hale,* 463 U.S. 591, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983), the Supreme Court held that a suit could be brought in state court when the plaintiff alleged that misrepresentations occurred in the hiring of replacements for strikers. Balancing the state's interest and the risk that the state would interfere with conduct that the Act protects, *id.* at 3177, the Court found that interference would be minimal because the focus of the NLRB would be on the rights of the strikers, not on the alleged deception of replacements. *Id.* at 3183. Furthermore, whereas the NLRB would be unable to order any relief for the aggrieved replacements, the state court could order such relief.

The question on this appeal is whether to extend these exceptions to permit a state court to entertain the Company's claim of tortious interference with a business. The conduct complained of includes unreasonable bargaining demands, threats in negotiating, and encouragement of a strike with the purpose of harming the company.

■ We decline to extend the *Farmer* rationale to this case for two reasons. First, the facts involved in the prior cases permitting state jurisdiction were significantly different. In *Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), for example, the cause of action was defamation. There the state court could focus on whether a statement was defamatory without focusing, as the NLRB would, on whether the statements were coercive in an employment setting regardless of accuracy. In the case *sub judice,* the focus would be on the same facts in both the state court and NLRB proceedings.

Second, the Court in each case expressly limited the reach of the holding. In *Farmer,* the Court explained that its decision rested in part on the fact that an element of the state tort was that the defendant's conduct be "outrageous," causing abuse that "no reasonable man in a civilized society should be expected to endure." 430 U.S. at 301–02, 97 S.Ct. at 1064. The Court cautioned against an overbroad reading of its rationale, stating that something more than a serious unfair labor practice is needed before a state court can take jurisdiction:

> [W]e reiterate that concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme.... Simply stated, it is essential that the state tort be either unrelated to [the unfair labor practice] or a function of the particularly abusive manner in which the [unfair labor practice] is accomplished ....

430 U.S. at 305, 97 S.Ct. at 1066. Federal labor law clearly permits employees to inflict economic harm on an employer for purposes of collective bargaining. Methods such as striking and picketing, protected by the Norris-LaGuardia Act and the National Labor Relations Act, are intended to cause monetary losses so that compromise or concession becomes a more desirable alternative. *See, e.g., NLRB v. A. Lasaponara & Sons, Inc.,* 541 F.2d 992 (2d Cir.1976), *cert. denied,* 430 U.S. 914, 97 S.Ct. 1325, 51 L.Ed.2d 592 (1977); *Vegelahn v. Guntner,* 167 Mass. 92, 44 N.E. 1077 (1896) (Holmes, J., dissenting); *see generally,* R. Gorman, Basic Text on Labor Law 4–5 (1976). The question of whether strikes and bargaining tactics interfere unlawfully with an employer's business is to be determined by the NLRB. In this case, the alleged tort was not peripheral to a labor dispute but at the heart of it. The NLRB would focus on both the activity (strikes, picketing, threats) and the object (whether to gain advantage in bargaining

or purely to harm the company). *See NLRB v. International Rice Milling Co.*, 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277 (1951); *NLRB v. Denver Building & Construction Trades Council*, 341 U.S. 675, 691 n. 22, 71 S.Ct. 943, 953 n. 22, 95 L.Ed. 1284 (1951). If a state court were to rule that the Union's conduct was tortious, it could clash head-on with decisions of the NLRB. Accordingly, we affirm the district court's finding that the state tort action was preempted.

## II. Res Judicata

The Union contends that the 1975 order granting a permanent injunction was a final order that bars the Company's present claim for damages arising from the 1975 strikes. The Company, on the other hand, contends that the order of December, 1975, was not a final order. The Company relies on three grounds to support this argument. First, it contends that the order was not final because it provided for its own expiration date within two years. Second, the Company contends that since its prayer for damages was not granted or denied, the requirements for finality established by Fed.R.Civ.P. 58 were not met. Third, the Company contends that since the judgment was not set forth on a separate document, the requirements of Rule 58 were not satisfied.

■ The Company's first argument is meritless. The injunction was written to expire in May, 1977, because that is when the collective bargaining agreement between the parties expired, and the court could no longer enforce the no-strike provision. The existence of an expiration date does not, in itself, detract from the finality of the order.

The Company's second argument must also fail. One reason is that there was no prayer for damages in the 1975 suit. Although the complaint states that irreparable damage was suffered and would continue to be suffered, that statement is the standard assertion for obtaining injunctive relief. The plaintiff made six separate requests for relief, all of which were equitable. Several circuits have held that suits for injunctive relief preclude later claims for damages on the same cause of action. *Mirin v. Nevada*, 547 F.2d 91, 94 (9th Cir. 1976), *cert. denied*, 432 U.S. 906, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977); *Lambert v. Conrad*, 536 F.2d 1183, 1185–86 (7th Cir. 1976); *Clarke v. Redeker*, 406 F.2d 883, 885 (8th Cir.), *cert. denied*, 396 U.S. 862, 90 S.Ct. 135, 24 L.Ed.2d 115 (1969). The position taken by these courts is the one recommended in 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4410 (1981).

■ The policy considerations in favor of adopting this rule are judicial economy and protecting the repose of litigants. C. Wright, A. Miller & E. Cooper, *supra*, at § 4403. On the other hand, a litigant who hurriedly seeks injunctive relief in a crisis may be primarily concerned with stopping further injury and may not, at that time, be aware of or concerned with the need to simultaneously seek all compensation for damages. In this case, the Company neglected to pursue its damage claim for almost seven years. We will not, therefore, allow it to come forward now and allege that it was deprived of an important opportunity to be heard.

The Company contends that damages were, in fact, sought in the 1975 case. Furthermore, both parties indicated in the court below that damages were sought in the 1975 complaint, and the district judge proceeded on that basis. Regardless of whether damages *were* sought or *could have been* sought in the action seeking an injunction, however, a subsequent suit for damages is precluded. *Mirin v. Nevada*, 547 F.2d 91 (9th Cir.1976); *Lambert v. Conrad*, 536 F.2d 1183 (7th Cir.1976). Assuming that the claim for damages was before the court, the absence of an express disposition of the damage claim does not destroy the finality of the order. The district court relied on facts which showed that in November, 1975, the district judge and both parties agreed on the content of the permanent injunction and that the order was understood by all concerned to be

the final disposition of the dispute. The Union's assertion regarding the mutual understanding reached by the parties was supported by the conference report and the docket sheet, both of which indicated that the action was "to be dismissed." The last entry on the docket was the order granting the permanent injunction. The case file was stamped and filed as closed. Further evidence indicating that all involved considered the judgment to be final includes the release of the bond, the assessment of costs, and the fact that plaintiff took no action to pursue this suit for nearly seven years.

■ The Company's final contention is that the requirements of Rule 58 were not satisfied because the judgment was not set forth on a separate document. The district court found that the separate document was not an absolute requirement. The court relied on *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), in which the Supreme Court ruled that under the circumstances in that case, "the parties should be deemed to have waived the separate-judgment requirement of Rule 58."

The facts of the case at bar are distinguishable from those in *Mallis*. In *Mallis*, the record showed a clear entry of a dismissal on the docket but the absence of any document resembling a judgment, which is not the situation here. Moreover, the issue addressed by the Court was whether the dismissal was a final order so that the appellate court had jurisdiction under 28 U.S.C. § 1291, whereas the issue before this Court is the finality of a judgment for the purposes of res judicata. What *can* be extracted from *Mallis* and applied here is the general principle that the requirements of Rule 58 may be waived under certain circumstances. In determining the appropriateness of waiver, the Court in *Mallis* emphasized a common-sense application of Rule 58 rather than a technical application as long as no parties have been misled. Furthermore, the Court approved consideration of evidence of the district court's intent regarding the finality of an order in

the absence of perfect compliance with the rule. *Id.* at 387, 98 S.Ct. at 1121.

Here the court's intent was clear, as evidenced by the judge's notation during the pre-trial proceedings. The Company's understanding that the case was terminated is evidenced by its failure to pursue the suit for almost seven years. Even when the Company attempted to pursue the issue of damages, it did not seek to revive the suit in federal court which it now claims was pending with the issue of damages unresolved. The fact that the Company commenced a new suit in state court to recover damages indicates the belief that the prior litigation was no longer pending. We, therefore, affirm the district court's finding that the 1975 permanent injunction was a final order and that the Company's claim for damages is precluded.

### III. Union Liability for Participation, Support or Ratification of a Wildcat Strike

■ Even if the Company's claim for damages was not precluded under the doctrine of res judicata, it lacks merit. Section 6 of the Norris-LaGuardia Act, 29 U.S.C. § 106, states that a union is not liable for the effects of a strike "except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof." This Court, in *United Steelworkers v. Lorain*, 616 F.2d 919 (6th Cir. 1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981), held that "clear proof" means "proof which is clear, unequivocal and convincing." *Id.* at 921. We stated that when employees violate a no-strike provision, a union is not compelled to use every possible means to end the strike. A union is not required to impose sanctions on the striking members, and the union may meet with the employer for the purpose of resolving some of the grievances in order to expedite a return to work. *Id.* at 921–23. A union may also provide legal representation and other routine services without being liable for supporting a strike. *Id.* Based on *Lorain*, the Company cannot prevail on the merits of this case.

The Company urged the district court to construe the actions of the Union as showing approval of the strike. The Company argues that by engaging in "negotiations," the Union was ratifying the strike and seeking to gain benefits from the violation. There is no indication that the Union was seeking to benefit as a result of the violation. Accordingly, *Lorain* prevents the Company from prevailing on this issue on the merits.

### IV. Summary Judgment

The Company contends that summary judgment was improperly granted because there were genuine issues of material fact. The Company's allegations that were made in the district court, even if true, would not affect the result, based on *Lorain*. Accordingly, the district court's grant of summary judgment was appropriate.

For the foregoing reasons, the judgment of the district court is AFFIRMED.