CALEX CORPORATION, Appellee,

v.

UNITED STEELWORKERS OF AMERICA et al., Appellants.

[Cite as *Calex Corp. v. United Steelworkers of Am.* (2000), 137 Ohio App.3d 74.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 98 CA 44.

Decided March 22, 2000.

*Christopher J. Newman* and *Richard N. Selby,* for appellee.

*Mark A. Rock* and *Timothy Gallagher,* for appellants.

VUKOVICH, Judge.

This is an action against the international union, the local union, and certain union members or representatives for damages incurred by Calex Corporation during a recent strike.

The trial was held in November 1997, and briefs were submitted to the court. In its February 4, 1998 journal entry, the trial court found the defendants jointly and severally liable, awarding Calex almost $400,000 in compensatory damages which mainly represents the cost of security and also includes the costs of broken windows, flat tires and attorney fees. The court also awarded Calex $100,000 in punitive damages. The defendants filed timely notice of appeal.

Appellants set forth nine assignments of error, the first of which provides:

"The trial court erred in granting Calex leave to file an amended complaint seeking compensatory and punitive damages, attorneys' fees and costs because these claims introduced matters occurring after the filing of the complaint."

At the heart of this alleged error is the distinction of an amended complaint versus a supplemental complaint, and the significance thereof. While this court agrees with appellants as to the existence of the distinction, we cannot arrive at the same conclusion that they suggest.

Appellants contend that Calex's "amended complaint" was actually a supplemental complaint. Pursuant to Civ.R. 15(A), leave to file an amended complaint shall be freely given when justice so requires. An amended complaint is used to raise matters occurring before filing of the original complaint but either overlooked or unknown. *Steiner v. Steiner* (1993), 85 Ohio App.3d 513, 519, 620 N.E.2d 152, 156. Conversely, a supplemental complaint is used to set forth transactions, occurrences or events that happen after the filing of the original complaint. Civ.R. 15(E). A supplemental pleading merely adds to or continues the original complaint. It enables the plaintiff to allege incidents that took place since the commencement of the lawsuit that will modify the amount or nature of relief sought. Staff Note to Civ.R. 15(E).

Here, the record is clear that Calex changed its complaint so that the complaint would encompass any actionable behavior engaged in by strikers after

the date of the original complaint. That is, Calex alleged continuing conduct, which included new incidents of alleged violence, intimidation, blockading, and property damage. Accordingly, Calex attempted to seek relief in the form of damages that it incurred after the filing of the original complaint, in addition to the prior injunctive relief. Thus, the pleading that Calex insisted was an "amended complaint" was actually a supplemental complaint. At worst, Calex misidentified its pleading. How such an insignificant error prejudiced appellants is not evident from their brief, from the record, or any logical application of legal theory. Civ.R. 15 permits a litigant to change a pleading to adjust to factual changes. Whether these changes are made pursuant to Civ.R. 15(A) or 15(E) is inconsequential, so long as the recipient of the changed complaint receives adequate notice, has a reasonable opportunity to respond, and is not otherwise prejudiced. Therefore, appellants contend that this appellate tribunal should seize this error as a reason for finding their assignment to be meritorious. The fatal flaw in their argument, however, is the simple fact that not all errors that occur in a trial do not inescapably lead to a finding that the error was prejudicial. Moreover, the cases cited by appellants are distinguishable from the facts presented in this matter, as those cases demonstrate a substantial prejudice to a party, such as an attempt to revive an extinguished cause of action, or to bring in a distinct new cause of action under the subterfuge of a supplemental complaint.

It is axiomatic that one can "supplement" something that is already in existence and that one cannot claim to be supplementing something not already in existence or before the court. With that in mind, we can properly evaluate the three cases cited by appellants to support their contention that the supplemental complaint filed by Calex was impermissible.

In *Mork v. Waltco Truck Equip. Co.* (1990), 70 Ohio App.3d 458, 591 N.E.2d 379, the Ninth Appellate District held that a plaintiff who unsuccessfully seeks a temporary restraining order against a neighbor's construction on a particular parcel of land cannot supplement his complaint later, seeking damages for alleged zoning violations at another parcel of land and setting forth causes of action in fraud, trespass, taking of property without just compensation, and due process violations. In *Giglio v. Konold* (1965), 5 Ohio App.2d 250, 34 O.O.2d 392, 214 N.E.2d 806, (a pre-Civil Rules case), the First Appellate District prohibited a plaintiff from supplementing his complaint to add tort claims, where the original complaint sought an injunction and a declaration of rights arising out of a contract. Both of these cases revolve around the idea that a separate lawsuit, not a supplemental complaint, is the vehicle for asserting new causes of action that arise after the original filing.

In *State ex rel. Dickman v. Defenbacher* (1949), 151 Ohio St. 391, 39 O.O. 221, 86 N.E.2d 5 (also, a pre-Civil Rules case), the Supreme Court of Ohio held that a

plaintiff cannot file a supplemental complaint to recover state money from payees after that plaintiff was unsuccessful in his suit seeking to preclude the state from paying those payees. The court stated that a supplemental complaint is not available to introduce a new or independent cause of action. *Id.* at 394, 39 O.O. at 222, 86 N.E.2d at 7. *Dickman* is distinguishable from the case at bar. In *Dickman,* the plaintiff sought to restrain one defendant from paying funds, suffered a judgment on the pleadings, and then sought to compel different defendants to repay the funds. Dickman's supplemental complaint changed the entire character of the action by proceeding under a different cause of action against different defendants.

In the case at bar, the cause of action and the defendants remained the same. It was simply the form of relief and the time period over which the defendants' alleged conduct occurred that differed. In accordance with the aforementioned Staff Note, Calex merely sought to alter the amount and nature of relief. The complaint was supplemented in order to assert a claim for damages that Calex allegedly incurred as a result of the defendants' continuing concerted actions against it. The supplemental complaint reflects topics that directly relate to the original complaint. Thus, Calex's supplemental complaint was not an improper attempt to add a new cause of action to the suit.

In the reply brief of appellants, they raise a sub-assignment of error that contends that Calex's supplemental complaint was filed in bad faith, after undue delay. However, a reply brief is merely an opportunity to reply to the brief of appellee. App.R. 16(C). A reply brief may not raise new assignments, which were omitted from appellants' original brief, especially where leave to file a new assignment was not sought from this court. Moreover, the trial court's decision to allow a supplemental complaint will not be reversed absent an abuse of discretion. *Mork,* 70 Ohio App.3d at 461, 591 N.E.2d at 381. There is nothing in the record to indicate that the supplemental complaint was filed in bad faith after undue delay. Appellants imply that Calex waited to seek leave to file its supplemental complaint until eight months after the last act taken by the court and just days after a National Labor Relations Board decision was rendered. However, the record shows that contempt hearings were scheduled and continued on multiple instances up until the time when Calex sought to file its supplemental complaint. Furthermore, at the time Calex sought leave to file the supplemental complaint, the strike was still ongoing, windows were still being replaced, and security costs were still rising. Thus, the court did not act unreasonably by allowing Calex to supplement its complaint. Accordingly, the first assignment of error is without merit.

To ease our analysis, we will contemporaneously address appellant's third, fourth, fifth, sixth, and seventh assignments of error which contend:

"[III.] The trial court's determination that defendants are jointly and severally liable is erroneous as a matter of law.

"[IV.] No finding of liability against any defendant can stand absent clear proof of their participation in, authorization or ratification of picket line misconduct that proximately caused the damages for which Calex seeks to recover.

"[V.] Judgment against the USWA, the local union and its officers cannot stand because there is no evidence, mush less clear proof, of participation in, authorization or ratification of picket line misconduct.

"[VI.] The trial court's entry of judgment against defendants should be reversed because Calex failed to establish that any defendant proximately caused the damages for which it seeks recovery.

"[VII.] The trial court erred in relying on the prior contempt proceedings in entering judgment against defendants."

Appellants' general allegation is that the evidence presented by Calex was insufficient to establish a concerted plan by the defendants to act unlawfully and thereby cause Calex to incur damages. It is obvious that it was Calex's obligation at trial to provide direct evidence that links the defendants to the claimed property damage and shows that the defendants or their officers authorized, condoned, or ratified the claimed damages. *Local Lodge 1297, Internatl. Assn. of Machinists & Aerospace Workers v. Allen* (1986), 22 Ohio St.3d 228, 231, 22 OBR 407, 409, 490 N.E.2d 865, 868. Initially, there appears to be some question as to the standard of proof to be applied when determining liability in a labor dispute. That is, whether the burden of proof is by a preponderance of the evidence, or by "clear proof."

Pursuant to Section 6 of the Norris–LaGuardia Act:

"No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge." Section 106, Title 29, U.S.Code.

Section 6 is applied by federal courts in labor disputes when adjudicating state tort claims. *United Mine Workers of Am. v. Gibbs* (1966), 383 U.S. 715, 737, 86 S.Ct. 1130, 1144, 16 L.Ed.2d 218, 234. Although this law applies to federal courts, various state courts have adopted the same "clear proof" test for holding unions responsible for the actions of their members. See, *e.g., Yeager v. Loc. Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.* (Aug. 6, 1982), Lucas App. No. L–82–020, unreported, 1982 WL 6541, *4–*5, affirmed in part and reversed in part (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666;

*Sindeldecker v. Internatl. Bhd. of Boilermakers* (Jan. 17, 1991), Muskingum App. No. CA 90–32, unreported, 1991 WL 6179, at *2; *Sowels v. Laborers Internatl. Union of N. Am.* (1981), 112 Mich.App. 616, 620, 317 N.W.2d 195, 197 (reiterating that labor unions could be eliminated if ordinary vicarious liability law was applied in labor disputes cases). In *Yeager,* the Sixth Appellate District applied the clear proof test of Section 6 in a labor dispute where the general manager sued the union and other for defamation. The appellate court affirmed the trial court's grant of summary judgment in favor of the union because union responsibility for property damage was not established by clear proof. The Ohio Supreme Court affirmed the court of appeals' judgment on this issue. Noticeably absent from this Supreme Court opinion is any rejection of the appellate court's use of Section 6.

■ The adoption of the clear proof test is considered to be a policy matter. See *Hiestand v. Amalgamated Meatcutters & Butcher Workmen of N. Am.* (1983), 233 Kan. 759, 763–764, 666 P.2d 671, 675 (adopting the clear-proof test to increase consistency and decrease forum-shopping). The United States Supreme Court has opined that one policy behind applying Section 6 to state tort actions is that punitive damages are available on state claims. *Gibbs,* 383 U.S. at 736, 86 S.Ct. at 1144, 16 L.Ed.2d at 233–234. The court surmised that Congress reasoned that since clear and convincing evidence is required before awarding punitive damages, it should also be required to prove responsibility of a union in a labor dispute. See *Id.,* 383 U.S. at 737, 86 S.Ct. at 1145, 16 L.Ed.2d at 234. See, also, R.C. 2315.21(C)(3). Pursuant to the foregoing authorities and the general policy in this country with regard to labor unions, we hereby embrace the clear-proof test of Section 6 of the Norris–LaGuardia Act as the proper standard for our review. To hold otherwise would dangle the sword of liability over a union and its officers for the illegal acts of its individual members.

■■ Clear proof is that which is unequivocal and convincing. *Gibbs,* 383 U.S. at 736–737, 86 S.Ct. at 1145, 16 L.Ed.2d at 233–234. It requires more than merely persuading the trier of fact by the preponderance of the evidence. *Lansdowne v. Beacon Journal Pub. Co.* (1987), 32 Ohio St.3d 176, 180, 512 N.E.2d 979, 984. It thus follows that the plaintiff has the burden to persuade the trier of fact by a substantial margin that the union, officer, or the individual member charged authorized, participated in or ratified the damaging conduct of its members. *Gibbs,* 383 U.S. at 737, 86 S.Ct. at 1145, 16 L.Ed.2d at 234.

■ With this standard in mind, we must hold that there lacked clear proof that the international union authorized, ratified, or participated in the acts which caused the damages incurred by Calex. The international union supported the strike, helped the local union organize, assisted in negotiations with Calex and

provided funds to the local union to distribute as strike benefits. These normal, routine union functions do not rise to the level of authorization of, participation in or ratification of unlawful acts. *Gibbs.* See, also, *United Steelworkers of Am. v. Lorain, Div. of Koehring Co.* (C.A.6, 1980), 616 F.2d 919, 921; *Fed. Prescription Serv., Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL–CIO* (C.A.8, 1975), 527 F.2d 269, 276–277. Although proof that the international union may have issued sanctions can assist it in proving that it did not condone violence, an international union is not required to impose sanctions upon unruly members of the local union in order to avoid liability in a damage suit by a company. *Falls Stamping & Welding Co. v. Internatl. Union, United Auto. Workers, Aerospace & Agricultural Implement Workers of America* (C.A.6, 1984), 744 F.2d 521, 526. Moreover, the testimony that the representatives of the international union were rude to Calex representatives does not constitute evidence that the international union is liable for acts of violence engaged in by union members. Additionally, the fact that USWA representatives threatened to strike and then threatened to keep the strike going does not create liability, as it is not unlawful to strike. Therefore, the judgment against the international union is reversed on the grounds that there is a lack of clear proof that it authorized, ratified, or participated in a course of unlawful conduct.

 Arlette Gatewood, the international union staff representative, was alleged to have authorized the unlawful course of conduct. The only probative piece of evidence presented by Calex against Gatewood was in the form of the following testimony by Rodney Hoover:

"Q. * * * [D]id the union ever talk to you about what was appropriate conduct—

"A. Oh, yes.

"Q. —on the picket line?

"A. Yes.

"Q. When was that?

"A. When Arlette Gatewood would come down and have his little meeting.

"Q. What did he tell you?

"A. The only thing that Mr. Gatewood ever said was he cannot have a strike when you are letting people into a shop.

"Q. You—

"A. You got to keep production down. You can't let production be carried on."

In rebuttal, Gatewood denied instructing strikers to engage in unlawful acts. Gatewood, and others, testified that Gatewood often encouraged strikers to obey the court's temporary restraining order and later preliminary injunction. Mr. Hoover was a striker who was banned from the picket line by the trial court after one month of picketing. He admits to drinking excessively while on the picket line and to throwing rocks and nails at cars, causing dents, broken windows, and flat tires. He also admits to having a gun while picketing. He later crossed the picket line to return to work at Calex.

Regardless of credibility comparisons, appellants urge us to give the words allegedly uttered by Gatewood an innocent construction. Contrary to Calex's suggestion, this case is distinguishable from the case where a union representative specifically instructed strikers to blockade entrances by any means possible, including stripping off people's clothes, and where another union representative congratulated the strikers in closing down the plant, and where the union indicated that it had soldiers who can win the battle and promised protection from criminal proceedings. See *Kayser–Roth Corp. v. Textile Workers Union of America, AFL–CIO* (C.A.6, 1973), 479 F.2d 524, 527. As strikers are permitted to peacefully attempt to dissuade employees, replacement workers, vendors, and customers from entering a plant, the words allegedly spoken by Gatewood should not be construed as being made with intent to incite blockading of entrances through the use of property damage and threats, especially where clear proof is necessary to prove his part in any unlawful course of conduct. Therefore, we hold that the above-quoted portion of Hoover's testimony does not demonstrate by clear proof that Gatewood authorized the strikers to engage in an unlawful course of conduct. Thus, the judgment against Gatewood is reversed.[1]

We will now address the issue of whether there existed clear proof that the remaining defendants authorized, participated in, or ratified the course of conduct that allegedly caused Calex to incur damages. The president of the local union, Mike Duraney, and the recording secretary of the local union, Jim LaGamba,

---

1. Appellants' second assignment of error argues that Gatewood was not properly named in the complaint as a defendant in his individual capacity. At issue is the fact that the caption of the complaint listed Gatewood as a defendant twice, once with the subtitle "Staff Representative." The two listings were meant to give notice that Gatewood was being sued in his representative capacity and individually. Appellants argue that he was not properly named as a defendant in his individual capacity because the body of the complaint states that the individually named defendants are Calex employees. The answer to Calex's complaint specifically denied that Gatewood was a Calex employee. Yet, when Calex filed its supplemental complaint, it failed to correct its error in the body of the complaint. In addition, the caption of the supplemental complaint merely names the international union, et al. Thus, Gatewood's argument that he was not properly pled as a defendant in his individual capacity has merit. However, because we are reversing the judgment against Gatewood due to a failure of proof, we need not delve any deeper into appellants' second assignment of error.

were found in contempt of court. Both were given suspended ten-day jail sentences. Local union member David Bond was found in contempt, sentenced to thirty days in jail, and released after one week. An evidentiary hearing was held with regard to the alleged contempt of two other members, but the court never issued findings with regard to their contempt citation. Other union members were charged with contempt but the court never held hearings on these allegations.

In general, a court may not take judicial notice of earlier proceedings in the court, except for proceedings in the immediate case under consideration. *In re Pyle* (May 6, 1992), Belmont App. No. 91–B–27, unreported, 1992 WL 98028, *1, citing *Diversified Mortgage Investors, Inc. v. Athens Cty. Bd. of Revision* (1982), 7 Ohio App.3d 157, 159, 7 OBR 201, 204, 454 N.E.2d 1330, 1333. Appellants argue that the testimony at the criminal contempt proceedings was not evidence that the judge could consider when making a decision in the civil lawsuit. Appellants contend that the criminal contempt proceedings were separate from the civil suit and that Calex never sought to incorporate those proceedings into the civil suit. On the other hand, Calex argues that the contempt proceedings were part of the civil case, thus allowing the court to take notice of the testimony that was presented therein. Calex points out that the contempt proceedings were docketed in the civil case file and captioned with the civil case name.

However, the defendants did not have the opportunity to purge their contempt by performing an affirmative act as in the case of a civil contempt imprisonment. *Internatl. Union, United Mine Workers of America v. Bagwell* (1994), 512 U.S. 821, 827–828, 114 S.Ct. 2552, 2557–2558, 129 L.Ed.2d 642, 651–652. In defining contempt where a jail sentence has been ordered, civil contempt is characterized by an indefinite sentence which can last as short as a minute depending upon the defendant's capitulation to the court's requests, whereas criminal contempt is characterized by a definite sentence. *Midland Steel Prods. Co. v. U.A.W. Local 486* (1991), 61 Ohio St.3d 121, 127, 573 N.E.2d 98, 103, citing *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 18 O.O.3d 446, 416 N.E.2d 610. In the case at bar, the sentences imposed were definite. The fact that the sentences were ultimately suspended does not make them of indefinite duration.

Furthermore, Calex's motions for contempt hearings against various individuals sought punishment. The trial court characterized the contempt proceedings as being criminal and imposed punishment to vindicate the court's authority for repeated acts of disobedience. Also, the court spoke of the contempts as marks on the defendants' records. See *Brown*, 64 Ohio St.2d at 252, 18 O.O.3d at 447–448, 416 N.E.2d at 612 (stating that criminal contempt is a crime). Thus, the contempt proceedings herein appear to have been criminal. It is recognized that

criminal contempt is a separate proceeding. Because the contempt proceedings were separate criminal actions, some of which were never completed, they should not have been considered as evidence against the defendants in the civil suit by way of judicial notice.

In addition, testimony of a witness at another hearing in the same or a different proceeding is only admissible if the declarant is unavailable and the other party had an opportunity and a similar motive to examine the witness at the prior proceeding. Evid.R. 804(B)(1). In the case at bar, the main witnesses who testified at the contempt hearings did not testify at the civil trial. There was no allegation that these witnesses were unavailable to testify at the civil trial. Moreover, the contempt proceedings took place before Calex supplemented its complaint seeking over a million dollars in compensatory and punitive damages. Thus, the defendants did not have notice of the potential liability involved, which may have affected their motive to defend. Prejudice to defendants as a result of the court's taking notice of the prior testimony is apparent.

Therefore, to determine if clear proof existed with regard to the remaining defendants, we shall only review the transcript from the bench trial of the civil case. This transcript alludes to numerous incidents of property damage at Calex. However, the offenders are unidentified. Local union officers were named individually in the complaint as defendants. In addition, the individual members of the local union were sued as a class.

As we noted earlier, an officer or member of a union cannot be held liable for acts of other individuals unless there is clear proof that said officer or member authorized, ratified, or participated in the unlawful acts performed by the individuals. Section 106, Title 29, U.S.Code. With regard to Steve Zitkovich, Bill Demler, and Richard Stiles the trial record lacks proof that these three officers individually participated in unlawful acts that caused the damages incurred by Calex. During the trial, there was mention by the attorneys that officers Mike Duraney and Jim LaGamba had been found guilty of contempt. However, an attorney's statement is not evidence that will establish proof of participation in unlawful acts. The witnesses who could have testified against them at trial to establish any unlawful acts did not. Again, the testimony from the prior contempt proceedings was inadmissible in the civil trial. Thus, there is a failure of proof as to the officers' liability.

As for the individual union members who were all sued as a class of defendants, judgment against them is also improper. First, we note the lack of evidence presented at the trial against the individual union members. Even at the contempt hearings, the contents of which we have previously ruled inadmissible, there was no evidence with regard to the majority of the individual members. Next, we point out that the court never certified the class of defendants as

required by Civ.R. 23. We also notice that, although the union members were served with copies of the preliminary injunction, they were not served with the original complaint or the supplemental complaint. Thus, it is quite possible that the individual union members had no notice that they were being sued for over one million dollars.[2] Moreover, the trial court's judgment entry does not refer to the union members as a class of defendants when it names the defendants in the case. Hence, it appears that the trial court recognized the procedural defect and did not enter judgment against the class.

As for the liability of the local union, testimony established that nails were thrown under cars that entered the plant. Calex presented bills from a tire store. Testimony also established that rocks were thrown at cars and at the plant. Evidence was presented about broken windows at the plant and about the cost of replacing these windows. Bills for increased security were presented to the court. Witnesses opined that security was a necessity due to picket line misconduct. However, one of these witnesses admitted that extra security would have been necessary even if Calex had had advance notice of the strike, meaning that some of the costs of security would have existed even if no picket line misconduct occurred. Ten video cameras were purchased; however, five of these cameras were placed inside the plant, and a witness for Calex implied that the indoor cameras were mounted in order to monitor replacement workers. We recognize that the allegations that damages were incurred by Calex and that unlawful acts occurred were supported by the preponderance of the evidence. See *Ramsey v. United Mine Workers of Am.* (1971), 401 U.S. 302, 309, 91 S.Ct. 658, 663, 28 L.Ed.2d 64, 69–70 (stating that the fact that an act occurred or the injury was sustained need only be proven by the preponderance of the evidence). However, clear proof was lacking that the Local Union authorized, participated in, or ratified the unlawful acts. *Id.* (stating that the clear-proof standard applies to the issue of whether the organization or person charged with the acts actually participated in, authorized, or ratified the acts).

Evidence was available to demonstrate that various individual members and officers committed intentional acts that damaged Calex's property. The presentation of that evidence could have established clear proof of the local union's participation in and authorization of unlawful acts. However, the witnesses to these acts did not testify at the trial. Affidavits that are submitted in the early stages of a lawsuit do not rise to the level of evidence once a case goes to trial as they merely constitute hearsay. See Evid.R. 801(C). Thus, the affidavits in the file, which swear to various unlawful acts of certain defendants,

---

**2.** In support of this query is the fact that union member Rodney Hoover testified for Calex and thus essentially testified against himself.

are not properly considered as proof. As previously analyzed, the witnesses to unlawful acts should have been called to testify at trial. Instead, the trial testimony involved only general accusations about the strikers as a group. The civil trial was full of testimony about damages but lacked sufficient evidence with regard to liability of any individual that could lead to proof of authorization, participation or ratification by the local union. Consequently, the judgment as it applies to the local union cannot stand.

Due to our resolution of these assignments of error, we need not address appellants' eighth and ninth assignments of error, which deal with punitive damages and attorney fees.

For the foregoing reasons, Calex's case suffered from a failure of proof at trial. Therefore, the judgment of the trial court is reversed.

*Judgment reversed.*

Cox, P.J. and WAITE, J., concur.