DECISION
{¶ 1} Relator, Priscilla Bellamy, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application under R.C.4123.60 for permanent total disability ("PTD") compensation that relator contends was payable at the death of Richard Bellamy, the claimant and relator's spouse.
 {¶ 2} Pursuant to former Loc. Rule 12(M) of the Tenth District Court of Appeals, this court appointed a magistrate without limitation of powers specified in former Civ.R. 53 to consider relator's cause of action.[1] The magistrate examined the evidence and issued a decision, wherein he made findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate recommended denial of relator's request for a writ of mandamus. Relator has filed timely objections to the magistrate's decision. See, generally, Civ.R. 53(D)(3)(b).
 {¶ 3} "In matters involving the Industrial Commission, the determinative question is whether relator has a clear legal right to relief. Such a right is established where it is shown that the commission abused its discretion by entering an order which is not supported by any evidence in the record." State ex rel.Valley Pontiac Co., Inc. v. Indus. Comm. (1991),71 Ohio App.3d 388, 391, citing State ex rel Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. However, "where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is inappropriate." ValleyPontiac Co., Inc., at 391, citing State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. See, also, Stateex rel. Fain v. Summit Cty. Adult Probation Dept. (1995),71 Ohio St.3d 658, citing State ex. rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589 (instructing that for a relator to be entitled to a writ of mandamus, a relator must show (1) a clear legal right to the relief requested; (2) respondent is under a clear legal duty to perform the requested act; and (3) relator has no plain and adequate remedy at law).
 {¶ 4} In her objections, relator asserts, among other things, that the magistrate's failure to address relator's challenge of the medical report of David C. Randolph, M.D., an issue which relator did not raise in her complaint or merit brief, constitutes error. Such a contention is unconvincing. Here, rather than challenging Dr. Randolph's report in her complaint or merit brief, relator addressed this issue in a reply brief and apparently at oral argument. Therefore, we cannot conclude that under such facts and circumstances the magistrate necessarily erred by not addressing relator's challenge of Dr. Randolph's report. See State ex rel. Miller v. Reed (1999),87 Ohio St.3d 159, 160 (wherein the Supreme Court of Ohio declined to address the merits of a constitutional claim because the appellant failed to raise the issue in his complaint or amend the complaint to include the claim, and the appellees did not expressly or impliedly consent to litigation of the claim); State ex rel. VanDyke v. Pub. Emp. Retirement Bd., 99 Ohio St.3d 430,2003-Ohio-4123, at ¶ 42; State ex rel. Massie v.Gahanna-Jefferson Pub. Schools Bd. of Edn. (1996),76 Ohio St.3d 584, 589; State ex rel. Plain Dealer Publishing Co. v.Cleveland, 106 Ohio St.3d 70, 2005-Ohio-3807, at ¶ 64. See, also, Hanlin-Rainaldi Constr. Corp. v. Jeepers!, Franklin App. No. 03AP-851, 2004-Ohio-6250, at ¶ 22, quoting Calex Corp. v.United Steelworkers of America (2000), 137 Ohio App.3d 74, 80, dismissed, appeal not allowed, 89 Ohio St.3d 1465 (stating that "[a] reply brief is merely an opportunity to reply to the brief of appellee. * * * A reply brief may not raise new assignments, which were omitted from appellant's original brief, especially where leave to file a new assignment was not sought from this court").
 {¶ 5} Moreover, notwithstanding relator's claims that the issue of Dr. Randolph's medical report was discussed at length during oral argument before the magistrate, in the record before us there is no transcript or recording of oral argument that was conducted before the magistrate of this court. Therefore, we are unable to review the parties' representations to the magistrate and relator's claim that the issue of Dr. Randolph's medical report was discussed at length during oral argument. See, e.g.,Lambert v. Lambert, Portage App. No. 2004-P-0057,2005-Ohio-2259, at ¶ 18 (observing that, absent a transcript of a hearing before a trial court magistrate, an appellate court was restricted to exploring only those matters that were contained in the record before it); Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199 (stating that "[t]he duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record").
 {¶ 6} Finally, relator's claim that the commission improperly relied on Dr. Randolph's report because he purportedly set forth no physical limitations and provided only a vague opinion that relator's decedent should have been capable of work activity is unpersuasive. In his report, Dr. Randolph properly listed relator's decedent's allowed claims. Furthermore, in response to a query as to whether relator's decedent was permanently and totally impaired from engaging in any sustained or remunerative employment due to the allowed conditions of his claim, and based upon reasonable medical probability, Dr. Randolph opined:
There may have been some degree of impairment attributed to the allowed conditions. However, he should have been capable of work activities based upon the information presently available, at least in a sedentary to light physical demand characteristic level. I would again note that this claimant should have been encouraged to ambulate to improve his vascular tone and hopefully diminish his body mass index. Simple strains and contusions would not have permanently removed him from work activities.
See, also, Ohio Adm. Code 4121-3-34(B)(2)(a) (defining "sedentary work").
 {¶ 7} Dr. Randolph further opined, in part:
It is my opinion that there was substantive impact from [relator's decedent's] unrelated and unallowed conditions, including his morbid obesity, diabetes, cardiac arrhythmia and muscular dystrophy. The clinical record is not well developed presently to assess the exact impact that those conditions would have on him. However, it is probable that his complete removal from the work force in 1992 was due to his other factors and conditions, rather than those listed as being legally allowed in this claim.
 {¶ 8} Here, Dr. Randolph's report constitutes "some evidence" supporting the commission's decision. Consequently, based upon our review, we cannot conclude that the commission's reliance upon Dr. Randolph's report was improper. See, generally, Stateex rel. Burley v. Indus. Comm. (1987), 31 Ohio St.3d 18, 20-21
(stating that "[t]he commission alone shall be responsible for the evaluation of the weight and credibility of the evidence before it. This court's role in the review of mandamus actions challenging the Industrial Commission's decision as to the extent of disability in cases involving multiple allowed conditions shall henceforth be limited to a determination as to whether there is some evidence in the record to support the commission's stated basis for its decision").
 {¶ 9} Therefore, for the foregoing reasons, we find that relator's objections to the magistrate's decision are unconvincing. Based upon our independent review, we conclude that the magistrate properly discerned the pertinent facts and further conclude that the magistrate properly applied the relevant law to those facts when he recommended denial of relator's request for a writ of mandamus.
 {¶ 10} Accordingly, we overrule relator's objections to the magistrate's decision and adopt the magistrate's decision as our own, as amplified herein, including the magistrate's findings of fact and conclusions of law. Therefore, we deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Klatt, P.J., and Brown, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Priscilla Bellamy, : Widow-Claimant of Richard L. Bellamy, :
Relator, v. : No. 05AP-1308
Pinkerton Incorporated and : (REGULAR CALENDAR) Industrial Commission of Ohio, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on July 20, 2006 Butkovich, Crosthwaite Gast Co., L.P.A., Robert E. Hof andJoseph A. Butkovich, for relator.
Earl, Warburton, Adams Davis, and Bruce L. Hirsch, for respondent Pinkerton, Inc.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 11} Relator, Priscilla Bellamy, is the surviving spouse of Richard Bellamy ("decedent") who died on January 3, 2003. In this original action, relator requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her R.C. 4123.60 application for an award of permanent total disability ("PTD") compensation that decedent would have been lawfully entitled to have applied for at the time of his death.
Findings of Fact:
 {¶ 12} 1. On November 14, 1992, decedent sustained an industrial injury while employed as a security guard for respondent Pinkerton, Inc., a self-insured employer under Ohio's workers' compensation laws.
 {¶ 13} 2. The industrial claim was initially allowed for "sprain thoracic region, contusion of chest wall, sprain sacroiliac region; deep vein thrombosis," and was assigned claim number L228900-22.
 {¶ 14} 3. On October 7, 1997, decedent's treating physician, Bruce S. Worrell, D.O., wrote:
Mr. Bellamy a patient under my care initially presented with an admission to the hospital for a fall at work, while he was a guard. During that fall he suffered swelling of his left leg that resulted in deep vein thrombosis of that leg. The patient was then discharged from the hospital on anticoagulant therapy. In January on [sic] 1994 he presented to my care with recurrence of pain and swelling in the involved leg. He was still on anticoagulant therapy at the time. Studies show that recurrence of the deep vein thrombosis, acutely. He was readmitted to the hospital and evaluated by the Vascular Surgery Department and a Greenfield filter was inserted because of recurrent thrombosis. Patient then suffered another episode of deep vein thrombosis and a pulmonary embolism on a third separate occasion. Patient has been on anticoagulation therapy since due to his hypercoagulative state, which leads him to easy coagulation and results in clotting. Patient also has a history of Type II diabetes. He also has a history of muscular dystrophy and cardiac arrhythmia providing secondary to his dystrophy. Patient also has chronic low back pain as a result of his injury on the job.
It is my opinion that Mr. Bellamy is unable to hold any means of employment due to his hypercoagulant state because of the various conditions that he felt recurrent clots, either prolonged sitting or prolonged standing could result in another clot because of his muscular condition and his low back problems, anything else would be difficult for him to undertake. I feel that Mr. Bellamy is totally disabled and should be compensated accordingly.
 {¶ 15} 4. On October 27, 1997, citing Dr. Worrell's report, decedent filed an application for PTD compensation.
 {¶ 16} 5. On March 11, 1998, at the commission's request, decedent was examined by William R. Fitz, M.D., who wrote:
This individual is significantly plagued by myotonic dystrophy and hyper-coagulant state as well as Type II diabetes. His impairments primarily are based upon his myotonic dystrophy and not that of his allowed claim. The occupational activity assessment that has been filled out is based upon his allowed condition only and does not include the myotonic dystrophy or hyper-coagulant state, which I think are more significant to his abilities but are not included in that assessment.
* * *
(4) "Can the claimant perform any of his former positions of employment?" No, I do not feel he could return to the occupation of a security guard due [to the] prolonged standing and walking necessary for this. I do think he could perform some work activity that would allow frequent position changes and no lifting over 15 pounds.
(5) "Can the claimant perform any sustained remunerative work activity?" Based upon his allowed claims only, I do believe he can perform sustained remunerative work activity but because he also has problems with regard to myotonic dystrophy and hyper-coagulant state I think it is going to be difficult for him to find remunerative work activity, but those are really his primary reasons for disability impairment and not his allowed claim.
 {¶ 17} 6. Following a September 10, 1999 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's threshold medical determination was based exclusively upon Dr. Fitz's report. Following a summary of Dr. Fitz's report, the SHO's order states:
The Staff Hearing Officer finds that the claimant has reached maximum medical improvement and that the industrial injury prevents the claimant from returning to work at his former position of employment. The Staff Hearing Officer further finds, based solely on the allowed conditions, that the claimant retains the residual functional capacity to perform employment activities which are sedentary to light in nature.
 {¶ 18} Following the above-quoted findings, the SHO's order analyzes the nonmedical factors and then concludes that decedent is able to perform sustained remunerative employment.
 {¶ 19} 7. On March 15, 2000, decedent moved for an additional claim allowance based upon the March 11, 1998 report of Dr. Fitz and the October 7, 1997 report of Dr. Worrell.
 {¶ 20} 8. Following a July 28, 2000 hearing, an SHO issued an order additionally allowing the claim for "hypercoagulant state" based upon the March 11, 1998 report of Dr. Fitz and the October 7, 1997 report of Dr. Worrell.
 {¶ 21} 9. Decedent apparently filed another PTD application on October 3, 2001, and yet another PTD application on April 24, 2002.
 {¶ 22} 10. With the PTD application filed April 24, 2002, decedent filed a report from Dr. Worrell dated July 27, 2000. Except for the date listed, the July 27, 2000 report is identical to Dr. Worrell's October 7, 1997 report.
 {¶ 23} 11. On January 3, 2003, decedent died of causes unrelated to the industrial injury before the commission could adjudicate his PTD applications filed October 3, 2001 and April 24, 2002.
 {¶ 24} 12. In February 2003, an SHO mailed two ex parte orders dismissing the PTD application filed October 3, 2001, and the application filed April 24, 2002, on grounds that "the death has abated the current claim."
 {¶ 25} 13. On March 26, 2003, relator filed form C-5 of the Ohio Bureau of Workers' Compensation ("bureau"). The C-5 is captioned "Additional Information for Death Benefits." On the form, relator claimed that she was wholly dependent upon decedent at the time of his death. With the C-5, relator refiled the PTD application that decedent had previously filed on April 24, 2002. Relator also resubmitted the report of Dr. Worrell dated July 27, 2000.
 {¶ 26} 14. The filing of the C-5 by relator prompted the employer to request a medical records review to be performed by David C. Randolph, M.D. In his report dated September 3, 2003, Dr. Randolph stated:
It is my opinion this claimant could not be determined to be permanently and totally disabled based solely upon the allowed conditions in this claim. * * *
* * *
It is quite clear from the records that are available that this claimant was removed from the workforce for reasons and conditions that fall far outside of those listed as being legally allowed in the claim.
* * *
There may have been some degree of impairment attributed to the allowed conditions. However he should have been capable of work activities based upon the information presently available, at least in a sedentary to light physical demand characteristic level. * * *
* * *
It is my opinion that there was substantive impact from his unrelated and unallowed conditions, including his morbid obesity, diabetes, cardiac arrhythmia and muscular dystrophy. The clinical record is not well developed presently to assess the exact impact that those conditions would have on him. However, it is probable that his complete removal from the work force in 1992 was due to his other factors and conditions, rather than those listed as being legally allowed in this claim.
 {¶ 27} 15. Following an October 10, 2003 hearing, an SHO issued an order denying an award of PTD compensation. The SHO's order states:
The injured worker completed an application for Permanent and Total Disability Compensation which he signed on 04/24/2002 and filed on that date with the Industrial Commission. The injured worker died before the adjudication of the application on 01/03/2003. That application was dismissed by Industrial Commission order dated 02/05/2003, wherein the injured worker's death was found to have abated the claim. The injured worker's attorney refiled the application and requests compensation for Permanent and Total Disability, which allegedly accrued at the time of death.
In support of the application, the report of Dr. Worrell was submitted for consideration. In that report, dated 07/27/2000, Dr. Wor[r]ell set forth the treatment that he rendered to the injured worker, for the condition deep vein thrombosis. Dr. Worrell placed the injured worker on anticoagulant therapy and followed his care subsequently. In his medical report, Dr. Wor[r]ell noted the injured worker's other medical conditions: type II diabetes, muscular dystrophy and cardiac arrhythmia. Dr. Worrell opined that the injured worker was "unable to hold any means of employment" and was "totally disabled." However, Dr. Worrell did not clearly state that the disability was confined to the allowed conditions in the claim.
Prior to his death, the injured worker was not examined by the Industrial Commission or the employer on the then pending permanent total disability application. The employer submitted the medical report of Dr. Randolph for consideration. Dr. Randolph reviewed medical records and opined that the injured worker "should have been capable of work activity" considering the allowed conditions only.
The injured worker had filed a prior application for Permanent and Total Disability Compensation which was adjudicated on the merits by order of the Industrial Commission dated 09/10/1999. The allowed conditions in the claim at that time did not include the condition "hypercoagulant state." The Staff Hearing Officer finds that the medical evidence submitted by Dr. Worrell and Dr. Randolph do not support a finding that the injured worker would have been rendered permanently and totally disabled as a result of the medical conditions stemming from the allowed conditions in the claim at the time of his death. The Staff Hearing Officer further finds that the non medical disability factors were positive re-employment factors. The injured worker was 44 years old at the time the permanent total disability application was filed. The Staff Hearing Officer finds that such age would be a favorable re-employment factor in that it would enable the injured worker to adapt to new work rules, processes, methods and procedures involved in a new occupation. The Staff Hearing Officer further finds that the injured worker's high school education and self-proclaimed ability to read, write and perform basic mathematics would also be a favorable re-employment factor which would enable the injured worker to access unskilled and semi-skilled occupations. Therefore, the Staff Hearing Officer denies the application for Permanent and Total Disability Compensation and finds that there would be no accrued permanent and total disability compensation at the time of death.
This order is based on the report of Dr. Randolph dated 09/03/2003 and Dr. Wor[r]ell dated 01/27/2000.
 {¶ 28} 16. On December 7, 2005, relator, Priscilla Bellamy, filed this mandamus action.
Conclusions of Law:
 {¶ 29} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 30} According to relator, in the SHO's order of September 10, 1999, it was determined that decedent was permanently totally disabled based upon a nonallowed condition. Thereafter, when the claim was allowed for that previously nonallowed condition, the commission allegedly was compelled to award PTD compensation. In short, relator contends that the commission's prior reliance upon the report of Dr. Fitz compelled a PTD award when the commission granted the additional claim allowance for "hypercoagulant state." The magistrate disagrees with relator's argument.
 {¶ 31} To begin, the SHO's order of September 10, 1999, does not render a finding that decedent was permanently totally disabled based upon one or more nonallowed conditions even though the relied-upon report of Dr. Fitz does indicate that nonallowed conditions may prevent decedent from performing any sustained remunerative employment.
 {¶ 32} The commission has no authority to render an adjudication determining that a claimant is permanently totally disabled due to a nonallowed condition. State ex rel. Waddle v.Indus. Comm. (1993), 67 Ohio St.3d 452. Nor did the commission exceed its authority in that regard. The SHO's order of September 10, 1999, only determines that decedent is not permanently totally disabled based upon the allowed conditions of the claim.
 {¶ 33} Moreover, even if the commission had the authority to determine PTD based upon a condition that was not allowed in the claim at the time of the adjudication, relator's argument still fails. Dr. Fitz's report at best indicates that decedent was unable to perform sustained remunerative employment because of "myotonic dystrophy and hypercoagulant state." As previously noted, the industrial claim is not allowed for myotonic dystrophy. Thus, relator's argument still fails even if the SHO's order of September 10, 1999, could be viewed as an adjudication of PTD based upon a nonallowed condition — something the commission has no authority to adjudicate.
 {¶ 34} The magistrate notes that, at oral argument, relator's counsel conceded that relator's above-discussed argument is seriously flawed.
 {¶ 35} Having conceded the main argument set forth in relator's brief, relator's counsel proceeded at oral argument to challenge the report of Dr. Randolph. However, the magistrate declines relator's invitation to address issues that relator has failed to brief.
 {¶ 36} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Since this matter was referred to this court's magistrate, the Local Rules of the Tenth District Court of Appeals were amended, effective May 1, 2006, and Civ.R. 53 was amended, effective July 1, 2006.